Robert B. CHRISTENSON, Appellant,

v.

Daniel J. RAMAEKER, Appellee.

No. 83–1358.

Supreme Court of Iowa.

April 17, 1985.

David A. Scott of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellant.

Michael L. Zenor of Zenor & Carr, Spencer, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, LARSON, CARTER, and WOLLE, JJ.

WOLLE, Justice.

In this action for damages based on 42 U.S.C. section 1983, plaintiff Robert D. Christenson contends that defendant David J. Ramaeker, a criminal investigator for the state, violated his constitutional rights by causing him to be arrested for a burglary he did not commit. Plaintiff alleged that defendant negligently failed to conduct an adequate investigation and was improperly motivated when he sought and obtained issuance of the warrant for his arrest. Defendant moved for summary judgment on two grounds: (1) plaintiff "was properly arrested pursuant to an arrest warrant issued by a duly appointed and acting [state] magistrate," and (2) "probable cause existed for the arrest of the defendant." The trial court granted summary judgment on the second ground, but we affirm on the first ground because no genuine issue of material fact surfaced concerning the validity of the facially-valid arrest warrant.

We review the facts in this summary judgment record in the light most favorable to the plaintiff. Iowa R.Civ.P. 237; *Tasco, Inc. v. Winkel*, 281 N.W.2d 280, 282 (Iowa 1979) (even if the evidence in the record is not contradicted, summary judgment is not appropriate if reasonable minds may draw different inferences from the evidence); *Daboll v. Hoden*, 222 N.W.2d 727, 736 (Iowa 1974) (summary judgment court is not bound to accept evidence in the record as true even though it is uncontradicted).

The facts summarized in that light show that the burglary which gave rise to plaintiff's arrest occurred on August 4, 1979. The burglary victim, Michael M. Nicolai, was a paid police informant who had been instrumental in obtaining convictions of several persons for drug-related crimes. Nicolai had maintained a working relationship with defendant in connection with his work as a special agent for the Iowa Division of Criminal Investigation. At the time he was burglarized, Nicolai was concerned about his own well-being because his activity as an informant had become widely known, resulting in threats against him.

In reporting to the police and then to defendant on what occurred during the burglary, Nicolai said that he heard people coming up the stairs to his apartment in Milford, Iowa. The people left without announcing their presence but returned a few moments later and knocked on his door. Nicolai said that when he inquired one of the individuals identified himself as Kenny Ahrens and the other as Bob Christenson. Nicolai related that when he refused entry to the persons at his door they proceeded to break into his apartment. Nicolai fled through an adjoining door to the police station and returned with officers who discovered that his apartment had indeed been burglarized.

Defendant undertook to investigate the burglary, working under the direction of the Dickinson County Attorney. He received most of his information from visiting directly with Nicolai. On May 16, 1980, after consulting with the county attorney, defendant signed and filed a complaint and affidavit charging both Ahrens and Christenson with burglary in the first degree. Defendant's affidavit provided that "the following facts known by me or told to me by other reliable persons formed the basis for my belief that the [defendants] committed this crime," then stated:

That on Aug. 4th, 1979 Kenny Ahrens and Robert Christenson burglarized the residence at 9:15 Okoboji Ave. in Milford, Ia. Taken was $40.00 and valium for which the victim had a prescription.

On the basis of the information contained in the complaint and affidavit, a district associate judge determined that defendant had established probable cause to make the arrests of both Ahrens and Christenson. The judge issued arrest warrants, and both men were arrested by local police officers.

Ahrens eventually pleaded guilty to second-degree burglary and was convicted and sentenced for that offense. Soon after formal charges were filed, however, the county attorney realized that he had inadequate evidence to convict plaintiff. Ahrens denied that plaintiff had been with him on the night of the burglary, and Nicolai subsequently admitted that he did not know plaintiff and had not heard anyone speak his name at the time of the break in. After plaintiff had been held in jail for thirty days in lieu of a $25,000 bond, the burglary charge against him was dismissed and he was released.

On April 5, 1982 plaintiff commenced this section 1983 action alleging that defendant, acting under color of state law, had damaged him by wrongfully causing his arrest in violation of his constitutional liberty interests. The essence of plaintiff's amended petition, read in a light most favorable to him, is that defendant negligently, recklessly, and intentionally included false information in the complaint and affidavit which led to the issuance of the arrest warrant. Plaintiff did not allege that the arrest warrant was invalid on its face or that the complaint and affidavit which led to its issuance were insufficient in form or content. Rather he alleged in his petition that defendant filed the complaint and affidavit "without legal justification, probable cause, or reasonable and prudent investigation of the matter...." He prayed for actual and exemplary damages for the alleged deprivation of his liberty interests and resulting personal injuries.

I. *Elements of Plaintiff's Section 1983 Claim.*

■ The civil rights statute on which plaintiff bases his claim, commonly referred to as section 1983, provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1981). To support his claim derived from that statute, plaintiff must show (1) that the defendant deprived him of a right secured by the constitution and laws of the United States, and (2) that defendant acted under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 428·(1981); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142, 150 (1970); *see Cunha v. City of Algona,* 334 N.W.2d 591, 596 (Iowa 1983) (listing elements of § 1983 claim against municipality). The second major element of this cause of action, requiring that defendant have acted under color of state law, is firmly established in this case because defendant was acting at all pertinent times in his official capacity as a criminal investigator for the state. This appeal concerns only the first element, the claim that defendant violated his constitutional rights.

■ Initially we must determine what right "secured by the constitution and laws" plaintiff contends was violated by defendant's conduct. Plaintiff's petition alleged only that defendant's conduct violated his "constitutional liberty interests" without identifying what constitutional right was infringed. Both the right to be free from illegal arrest and the right to due process after arrest are liberty interests which enjoy constitutional protection. We first analyze plaintiff's post-arrest due process rights, then his rights arising under the fourth amendment, as incorporated into the fourteenth amendment to the United States Constitution.

## II. *Was Plaintiff's Right to Due Process Violated?*

The pertinent text of the fourteenth amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law"; plaintiff would have an action for damages against defendant under section 1983 if defendant, acting under color of state law, had denied him due process and thereby deprived him of his liberty. *See Parratt v. Taylor,* 451 U.S. at 537–38, 101 S.Ct. at 1913–14, 68 L.Ed.2d at 429–30. Any due process claim that we might infer from plaintiff's pleaded facts, however, is plainly without merit by reason of a controlling decision of the United States Supreme Court. In *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the plaintiff had been arrested on drug charges pursuant to a facially-valid warrant but contended that the sheriff had negligently failed to use identification procedures after arrest which would have revealed that he was not a person who should have been held in custody. The Court held there was no merit in his section 1983 claim against the sheriff based on the claimed violation of the due process clause, stating:

> Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee that only the guilty will be arrested. If it did, section 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.

*Id.* at 145, 99 S.Ct. at 2695, 61 L.Ed.2d at 442.

■ The Court suggested in *Baker* that the plaintiff's section 1983 claim might have a valid due process basis if he had been "detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." *Id.* at 144, 99 S.Ct. at 2694, 61 L.Ed.2d at 441. That was not the situation in *Baker,* and neither is that the factual situation in this case. Like the plaintiff in *Baker,* plaintiff here was detained pursuant to a facially-valid warrant. *Id.; see Brewer v. Blackwell,* 692 F.2d 387, 399 (5th Cir.1982) (§ 1983 due process claim against police officer lacked merit because arrest was made pursuant to a facially-valid warrant; *Baker* controlling). Here plaintiff admitted in his deposition that after he was arrested and taken into custody pursuant to the arrest warrant, he made no protests of innocence until after his release from jail. Plaintiff has not made any showing that in this summary judgment record there is a genuine issue of material fact on which he might recover from defendant on any due process claim.

## III. *Were Plaintiff's Fourth Amendment Rights Violated?*

The fourth amendment to the United States Constitution provides in relevant part:

> The right of the people to be secure in their persons ... against unreasonable ... seizures, should not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation,....

"By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan,* 443 U.S. at 143, 99 S.Ct. at 2694, 61 L.Ed.2d at 440–41. The probable cause determination "must be made by a judicial officer either before or promptly after arrest." *Gerstein v. Pugh,* 420 U.S. 103, 125, 95 S.Ct. 854, 869, 43 L.Ed.2d 54, 71–72 (1975). A judicial officer's determination of probable cause is paid great deference by reviewing courts. *Massachusetts v. Upton,* — U.S. —, —, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721, 727 (1984); *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527, 546–47 (1983).

Because the arrest here in question followed issuance of an arrest warrant by an

impartial judicial officer, we are not here concerned with that body of fourth amendment law defining the circumstances under which a warrantless arrest may be justified. *See, e.g., Payton v. New York,* 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639, 652–53 (1980) (Fourth Amendment prohibits warrantless nonconsensual arrest in home absent exigent circumstances); *State v. Hardin,* 359 N.W.2d 185, 187–88 (Iowa 1984) (listing factors to be considered in determining whether exigent circumstances justify warrantless arrest). Moreover, plaintiff has not challenged the facial validity of the arrest warrant or the documents which led to its issuance, and we therefore are not concerned with whether the complaint and affidavit on which the arrest warrant was issued contained sufficient information to support the judicial officer's finding of probable cause. *See* Iowa Code §§ 804.1–.2 (1983) (specifying contents of complaint, affidavit and arrest warrant); *see, e.g., Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503, 1509–10 (1958) (complaint did not state factual basis for probable cause finding); *State v. Thornton,* 300 N.W.2d 94, 96 (Iowa 1980) (factual basis for a probable cause finding must appear on the face of the complaint or affidavit).

Plaintiff can only succeed in his claim that defendant violated his fourth amendment rights if facts in the summary judgment record provide him a basis for piercing the arrest warrant. The seminal case on this fourth amendment issue is *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks,* the Court held that a search warrant valid on its face and issued upon a magistrate's finding of probable cause could be undercut only if certain procedural and substantive requirements were satisfied by the person challenging its validity. *Franks* first confirmed that the affidavit supporting a warrant is entitled to a presumption of validity. *Id.* at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682; *see, e.g., United States v. Leon,* ―― U.S. ――, ――, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677, 692–93 (1984) (preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination); *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965) ("A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.").

*Franks* then formulated a standard for measuring the sufficiency of a criminal defendant's challenge to the validity of a facially-valid warrant:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id.* 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682. Even when a warrant affidavit contains false statements, the warrant will not be invalidated if the false statements are not necessary to a finding of probable cause. The challenger must show that excision of the false statements removes factual support essential to the probable cause finding on which the warrant was issued. *Id.*

We have recognized and applied these *Franks* standards in two recent criminal cases. *See State v. Seager,* 341 N.W.2d 420, 425 (Iowa 1983) (recklessly made and intentionally false statements must be excised from warrant in determining its validity); *State v. Groff,* 323 N.W.2d 204, 206–08 (Iowa 1982) (*Franks* standards applica-

ble to search warrant applications under both Iowa and U.S. constitutions).

Although *Franks* involved a search warrant rather than an arrest warrant, both types of warrant stand on the same fourth amendment footing. *See Giordenello v. United States*, 357 U.S. at 485–86, 78 S.Ct. 1249–50, 2 L.Ed.2d at 1509; *Krohn v. United States*, 742 F.2d 24, 26 (1st Cir.1984) (applying *Franks* standards to § 1983 action involving arrest warrant). We therefore adopt and apply here the substance of the *Franks* test in determining whether plaintiff has shown in this summary judgment record that defendant violated his constitutional rights by procuring an invalid arrest warrant.

■ A. *Negligent Investigation.* Plaintiff's petition alleged that defendant was "negligent in his investigation of the facts and circumstances surrounding his complaint and affidavit." Plaintiff contends that in the nine months between the burglary and the arrest, defendant should reasonably have discovered that Nicolai had lied and that there was not probable cause to arrest plaintiff. Even if he were able to prove that defendant was negligent in that or other respects, plaintiff would not thereby satisfy the *Franks* standards which call for a higher degree of culpability. *Id.* 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682; *see State v. Groff*, 323 N.W.2d at 210 ("... allegations of negligence or innocent mistake are insufficient under *Franks* to constitute a basis for challenging the veracity of an affidavit.").

B. *Intentional or Reckless Falsehood.* We turn then to the question whether defendant's complaint and affidavit were the product of deliberate falsehood or reckless disregard for the truth, grounds on which *Franks* permits impeachment of the affidavit and resulting arrest warrant.

Reviewing the summary judgment record in more detail, we note that both parties supported their positions with affidavits, and they also relied on plaintiff's answers to interrogatories and the deposition testimony given by both parties and several other witnesses. In his detailed affidavit supporting the motion for summary judgment, defendant explained that his complaint and affidavit were based on the information Nicolai had given him connecting plaintiff with the burglary. Defendant said that Nicolai had been a police informant and "had given reliable information on a number of previous occasions." He also said that much of what Nicolai told him had been corroborated by information defendant gathered from other sources. Defendant emphasized that he had not previously been acquainted with plaintiff and only included his name in the complaint and affidavit because of what Nicolai had told him.

■ In resisting defendant's motion for summary judgment, plaintiff denied that he had been involved in the burglary and contended that there was no truth to Nicolai's accusations linking plaintiff to the burglary. The summary judgment record does show that Nicolai may have lied to defendant when he told him that plaintiff was with Ahrens at the time of the burglary. That evidence, however, falls far short of satisfying the *Franks* test. The question is not whether Nicolai lied to defendant, but whether defendant intentionally or recklessly included in the complaint and affidavit false information about what Nicolai had told him. We must focus on the facts within defendant's knowledge at the time he initiated the arrest. Facts that came to light after the arrest are irrelevant to the determination whether probable cause existed at the time of the arrest. *Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 139 (1959); *compare Children v. Burton*, 331 N.W.2d 673, 681–82 (Iowa 1983) (police officer had probable cause as a matter of law at the time he made arrest, although subsequent events showed the victim was mistaken in identifying the person to be arrested) *with Kraft v. City of Bettendorf*, 359 N.W.2d 466, 470 (Iowa 1984) (existence of probable cause to make arrest a fact question when circumstances known to officer at the time would cause reasonable person to doubt veracity of informant's statements). On

this record we must conclude that even if Nicolai lied, there is no indication whatsoever that defendant knew Nicolai was lying. Neither is there any evidence in the record to suggest that defendant acted in reckless disregard of the truth in accepting Nicolai's report that the plaintiff and Ahrens were the two persons who had burglarized his apartment. The record shows nothing more than that Nicolai had given reliable information in the past and does not suggest any reason for defendant to doubt Nicolai's identification of plaintiff as one of the burglars.

Plaintiff asks us to draw an inference that defendant intentionally and recklessly falsified the complaint and affidavit from the circumstance that Nicolai had been working as an informant and had assisted defendant in presenting drug charges on other cases. Answering a written interrogatory concerning plaintiff's allegation that his arrest was improperly motivated, plaintiff stated:

I believe that the motive for my arrest was to keep Michael Nicolai or other paid informants working for the State of Iowa. My belief is based upon circumstantial evidence and statements by the defendant.

Plaintiff has not explained what circumstantial evidence supported that belief, but he has explained what he meant by "statements of defendant" in that interrogatory answer. Kenneth Ahrens testified by deposition that after the court had sentenced him for his role in the burglary, defendant had said to Ahrens' mother:

[Y]ou can go back and tell all your friends in Spencer what is going to happen to them if this happens again.

Ahrens explained this meant "if anybody went and messed around with Nicolai again they were going to get some harsh treatment."

Even accepting that evidence in the light most favorable to plaintiff, we find it does not compel or even suggest the inference that defendant intentionally or recklessly misstated facts at the time he filed his complaint and affidavit. There is nothing

in the record to show that at the critical time when defendant was contemplating arresting Ahrens and the plaintiff, the names "Robert Christenson" or "Kenneth Ahrens" meant anything more to defendant than that Nicolai had identified them as the persons who burglarized his apartment.

Plaintiff had full opportunity to provide a factual basis for his allegation that defendant was acting in bad faith, maliciously, and recklessly when he included plaintiff's name on the complaint and affidavit. Both parties completed exhaustive discovery before defendant filed his motion for summary judgment. Indeed, it is the product of that discovery—testimony plaintiff gave during his discovery deposition—that confirms the absence of any genuine issue of material fact in this case.

Plaintiff admitted in his deposition that he had never met or seen defendant before plaintiff's deposition was taken long after the arrest. Plaintiff was questioned extensively during his deposition concerning his allegations that defendant had acted not just negligently but also intentionally and recklessly. Plaintiff testified that he did not think defendant arrested him out of spite or personal ill-will and knew of no reason why defendant "would have sort of had it out" for him. Asked what was his "basic complaint" about what defendant did when he filed charges against him, plaintiff said only that defendant had not investigated the case thoroughly. He said he had no reason to think that Nicolai had not in the past given reliable information to defendant and other state agents. He then testified:

Q. Do you have any information, either your personal knowledge or what you've been told by any third party, that would lead you to think that when Dan Ramaeker signed that [complaint and affidavit] that caused your arrest, any reason to believe that Mr. Ramaeker did not in fact at the time think you were guilty?
A. At the time, no.

Viewed in the light most favorable to plaintiff, this record leaves us entirely in the dark as to any circumstances leading to

the arrest of plaintiff that were significantly different than those explained by defendant: Nicolai told him plaintiff was with Ahrens when the burglary took place, so defendant decided both should be arrested. This summary judgment record provides no genuine issue of material fact on which plaintiff can successfully meet the *Franks* standards for impeaching defendant's complaint and affidavit and thereby invalidating the arrest warrant.

C. *Burden of Proof.* Plaintiff in a separate assignment of error contends that the summary judgment court improperly placed on him the burden to plead and prove defendant's lack of probable cause for arresting him. We have determined that defendant was entitled to summary judgment on a different ground than that relied upon by the trial court. We therefore address the issue of burden of proof only in relation to the ground on which we have relied, arrest pursuant to a facially-valid arrest warrant.

Plaintiff had the burden to prove as an element of his section 1983 case that defendant's conduct violated his constitutional rights. *Baker v. McCollan,* 443 U.S. at 140, 99 S.Ct. at 2692, 61 L.Ed.2d at 439. Once it appeared that plaintiff was arrested pursuant to a facially-valid warrant, plaintiff also had the burden to satisfy the *Franks* standards for impeaching the documents underlying the warrant itself. *State v. Groff,* 323 N.W.2d at 211 (defendants attempting to impeach search warrant affidavit "failed to sustain their burden of proof under *Franks*").

■ The cases plaintiff has cited were concerned with the burden of proof on a different issue—a public official's "defense of good faith and probable cause" which can give rise to qualified immunity. *Pierson v. Ray,* 386 U.S. 547, 555–57, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288, 295–96 (1967) (recognizing "the defense of good faith and probable cause" in § 1983 case involving unconstitutional warrantless arrest); *Dellums v. Powell,* 566 F.2d 167, 176 (D.C.Cir.1977) (explaining elements of defense of good faith in case involving warrantless arrest); *Street v. Surdyka,* 492 F.2d 368, 374–75 (4th Cir.1974) (same); *see Barker v. Norman,* 651 F.2d 1107, 1124 (5th Cir.1981) ("It is distinctly different to say that the conduct of the defendant did not violate a constitutional right of the plaintiff than to say that the defendant's conduct violated a constitutional right but the defendant is immunized from liability by virtue of a qualified official immunity."). Qualified immunity is an affirmative defense, with the burden of proof on the person asserting it. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572, 577–78 (1980). Here, however, defendant was entitled to summary judgment not on the basis of an affirmative defense but because plaintiff has not satisfied a basic element of his section 1983 claim, proof that defendant deprived him of a constitutional right.

Because the summary judgment record disclosed no genuine issue of material fact on which plaintiff could recover from defendant on his section 1983 claim, the trial court correctly granted defendant's motion for summary judgment.

AFFIRMED.