**Eldon BURR,
Plaintiff-Appellant/Cross-Appellee,**

v.

**John DAHLGRAN and the State of
Iowa, Defendants-Appellees/
Cross-Appellants.**

**No. 84–365.**

Court of Appeals of Iowa.

Aug. 29, 1985.

Joseph C. Johnston of Johnston & George, Iowa City, for plaintiff-appellant/cross-appellee.

Thomas J. Miller, Atty. Gen., and Patrick J. Hopkins, Asst. Atty. Gen., and John R. Scott, Sp. Asst. Atty. Gen. for defendants-appellees/cross-appellants.

Heard by OXBERGER, C.J., and SCHLEGEL, and SACKETT, JJ.

SACKETT, Judge.

Plaintiff Eldon Burr's wife suspected he was trying to kill her with poisoned candy. She took the candy to the local police department, which took the candy to the Department of Criminal Investigation (DCI) laboratory in Des Moines. The local police talked to an employee of the DCI, Defend-

ant James Dahlgran, and left the candy with Dahlgran to analyze.

Burr was arrested and charged with the attempted murder of his wife. The charges were subsequently dismissed. After filing a claim, Burr filed suit against the State of Iowa and Dahlgran claiming that Dahlgran was reckless in his investigation and his analysis of the candy and that the state was bound to indemnify Dahlgran.

The police officers testified that Dahlgran called them three days after they took the candy to him and told them that nicotine had been sprayed on the candy. Dahlgran allegedly stated to the officers that the candy contained enough nicotine to kill a human being if the whole box of candy were eaten. Dahlgran denied making these statements. The trial court found the statements had been made and that Dahlgran knew when he phoned the police he had not performed sufficient quantitative tests to support his conclusion. Further, the court found that Dahlgran knew or should have known that his statements could very probably lead to Burr's arrest. The trial court found Dahlgran's conduct to be willful and wanton.

Burr appeals contending the State of Iowa may be sued for reckless investigation of a crime and that the trial court was incorrect in finding Dahlgran's conduct to be "willful and wanton" but not "reckless." In *Jontz v. Mahedy*, 293 N.W.2d 1, 2 (Iowa 1980), the supreme court subscribed to our holding in *Gartin v. Jefferson County*, 281 N.W.2d 25, 27–28 (Iowa App.1979) and determined from the language of Iowa Code section 25A.2(5)(b) (1985) that the definition of "claim" does not include willful and wanton conduct. In *State v. Smith*, 324 N.W.2d 299, 302 (Iowa 1982), the Iowa court dismissed a claim for alleged negligent investigation by the DCI under section 25A and held:

> In view of the well fixed rule that, for persuasive public policy reasons, law enforcement officers have no liability for *mere negligence* in the investigation of crime, we do not believe the legislature,

in enacting the Iowa Torts Claim Act, intended to create a new and hitherto unrecognized tort. [emphasis added]

Plaintiff's two-pronged argument is that in *Smith* the supreme court clearly limited their decision to mere negligence and that the legislature's exclusion of willful and wanton acts from the statute is an implicit consent by the state to be sued for the reckless acts of their employees. Plaintiff cites *Vipond v. Jergensen*, 260 Iowa 646, 650, 148 N.W.2d 598, 601 (1967) and contends that in *Vipond* the Iowa Supreme Court recognized recklessness as separate from willfulness and wantonness. In *Vipond* the court discussed recklessness under our then existing guest statute and said:

> Reckless operation ... means more then negligence, more than the want of ordinary care. It means, proceeding with no care coupled with disregard for consequences. The acts must manifest a heedless disregard for or indifference to the rights of others in the face of apparent danger or be so obvious the operator should be cognizant of it, especially when the consequences of such actions are such that an injury is a probability rather than a possibility. *Recklessness may include willfulness or wantonness, but if the conduct is more than negligence it may be reckless without being willful and wanton.* We have required evidence of a persistent course of conduct to show no care with disregard for consequences. ... [emphasis added]

*Vipond* at 650, 148 N.W.2d at 601; *See also Sechler v. State*, 340 N.W.2d 759, 764 (Iowa 1983).

Willful and wanton may be recklessness but the evidence necessary to establish willful and wanton may rise above that necessary to establish reckless. Our first question, therefore, is whether there is substantial evidence in the record to determine the acts of Dahlgran were in fact willful and wanton. The state contends Dahlgran's actions were merely negligent. The trial court determined Dahlgran's action in initiating the call to the officers without

first adequately performing the tests formed the basis for its finding of willful and wanton. However, the trial court noted that if Dahlgran had not reported his conclusions to the officers, the outcome of the case would have been the same. In that scenerio, Dahlgran's actions would have been no more than negligent and therefore would not have formed the basis for a cause of action against the state or Dahlgran.

> ... [G]enerally speaking a voluntary act becomes willful in law only when it involves some degree of conscious wrong or evil purpose upon the part of the actor, or at least an unexcusable carelessness or recklessness on his part, whether the act be right or wrong.

*State v. Willing,* 129 Iowa 72, 74, 105 N.W. 355, 356 (1905). Wanton means something more than recklessness. *Sechler v. State,* 340 N.W.2d 759, 764 (Iowa 1983). An allegation that an act was done maliciously implies it was willfully and wantonly committed. *White v. Spangler,* 68 Iowa 222, 226, 26 N.W. 85, 87 (1885).

The trial court determined:

> ... Defendant Dahlgran's conduct in this instance rises to the level of willful and wanton. His admission that he had not performed enough tests to support his conclusion that the candy had been sprayed with a lethal dose of nicotine, when combined with his self-initiated phone call to the police the day after he had the candy delivered to him for testing, and the extensive knowledge he had of the case.

For purposes of this ruling, the Court adopts the following findings ..., which were the findings urged on behalf of Plaintiff.

1. Defendant Dahlgran knew the candy given to him for testing was allegedly poisoned.

2. Defendant knew that the candy had been given by the Plaintiff to the Plaintiff's wife. He was told that she sometimes ate a whole box of candy.

3. Defendant knew the police had one prime suspect, i.e., the husband of the alleged victim, the Plaintiff.

4. Defendant knew that the charge was attempted murder.

5. Defendant knew the police were not experts in toxicology and that he would be the only technician to analyze the candy.

We fail to find substantial evidence in the record to support a finding of either recklessness or willful and wanton.

We have carefully examined *Beeck v. Aquaslide 'N' Dive Corp.,* 350 N.W.2d 149, 157 (Iowa 1984), where the Iowa Supreme Court determined the trial court's finding of recklessness had substantial evidentiary support. In that case, the defendant corporation stated in its answer to plaintiff's complaint and in its answers to interrogatories filed on June 4, 1974, that it had manufactured the slide on which plaintiff was injured. *Id.* at 154. Defendant did not deny the manufacture of the slide until February of 1985, some seven months after the statute of limitations had run. *Id.* The president of defendant corporation alone realized the scope and magnitude of the misidentification problem, and he had access to information necessary for a proper identification. *Id.* at 156. The investigators had not been privy to this information, they could not properly identify a slide without this information, and the president of defendant corporation did not take steps to provide the investigators with essential identification data. *Id.*

We have also examined *Christenson v. Ramaeker,* 366 N.W.2d 905, 911 (Iowa 1985), where the supreme court had occasion to analyze evidence to determine if it compelled or even suggested the inference that defendant DCI agent intentionally or recklessly misstated facts where he filed a burglary complaint against Christenson. DCI agent had been advised by a person he believed to be a reliable informant that a man who tried to break into his apartment identified himself as Bob Christenson. *Id.* Based on this information alone and no further investigation, the agent filed a com-

plaint charging Christenson with burglary. *Id.* After the charge was filed, the informant admitted he did not know Christenson and had not heard anyone speak his name. *Id.*

The court in *Christenson* failed to find evidence to compel or even suggest the inference defendant intentionally or recklessly misstated facts at the time he filed his complaint and affidavit. *Id.* The plaintiff in *Christenson* testified he did not think defendant arrested him out of spite or personal ill-will, and plaintiff's basic complaint was that the defendant had not investigated the case thoroughly. *Id.*

This entire controversy centers not on whether there was nicotine on the candy or whether nicotine is a lethal highly toxic substance, both of which are testified to by both parties. The issue centers on the quantity of the substance found on the candy. There is no evidence in this record that Dahlgran knew Burr nor that he had any spite or ill-will toward him. Burr's basic complaint is that Dahlgran failed to perform sufficient tests to determine quantity. While *Smith v. State,* 324 N.W.2d 299 (Iowa 1982) does not define negligence (because the sole issue was whether Iowa recognized the tort of negligent investigation), the court in *Smith* said:

> The public has a vital stake in the active investigation and prosecution of crime. *Police officers and other investigative agents must make quick and important decisions as to the course an investigation shall take.* Their judgment will not always be right; but to assure continued vigorous police work, those charged with that duty should not be liable for mere negligence. [emphasis added]

*Smith,* 324 N.W.2d at 301.

The evidence shows Dahlgran made a quick determination and was not as thorough as he should have been in his testing. Obviously, he made a mistake in determining the amount of nicotine involved. While such action is hardly commendable or what the citizens expect of DCI, the evidence is not sufficient to support a finding of either willfulness and wantonness or recklessness. The actions of Dahlgran are negligence. Law enforcement officers have no liability for mere negligence in the investigation of a crime. *Smith,* 324 N.W.2d at 302.

The judgment of the district court dismissing the claim against the State of Iowa is affirmed.

AFFIRMED.