# Steele *v.* State.

*Indictment for Murder.*

1. *Organization of petit jury, under local law.*—Under the act approved February 21st, 1887, providing for the selection and organization of juries in Montgomery county, the presiding judge has a discretionary

[Steele v. State.]

power, in drawing talesmen after the original *venire* has been exhausted, to excuse from attendance any person who resides more than two miles from the court-house (Sess. Acts 1886–7, pp. 190–97); and this action being in open court, presumptively in the presence of the defendant's counsel, he can not complain that they were not "specially informed" as to the names of the persons so excused, when it does not appear that his counsel could not hear the names when called, nor that they asked for the names, or proposed to make any issue as to the residence of the persons so excused.

2. *Confesssons; admissibility of.*—The defendant in this case, a negro, charged with murder, while confined after arrest in a closed room, made an improbable statement to a white man who was his employer, as to the circumstances attending the killing; and being afterwards told by the man's brother that his story was improbable, and would not be credited—that physicians would be put on the stand to refute it, and that he "must tell a straighter tale if he hoped to be believed"—thereupon made the confessions which were offered in evidence against him on the trial; *held*, that the confessions were voluntary, and were properly received.

3. *Proof of character.*—The character of a person may be assailed by proof of general bad repute in the neighborhood of his residence, or where he is known; but proof of particular acts of bad conduct, or special circumstances of disgrace, is not admissible on direct examination, though it may be on cross-examination.

4. *Charge as to sufficiency or weight of evidence.*—It is the exclusive province of the jury to decide on the sufficiency and weight of the evidence before them; and a charge requested, which instructs them that certain evidence "is sufficient," or "is entitled to great weight," is properly refused.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The defendant in this case, Tarleton Steele, a freedman, was indicted for the murder of Lou Anderson "by striking her with an axe-helve;" was tried on issue joined on the plea of not guilty, convicted of murder in the first degree, and sentenced to be hanged. On the trial, as the bill of exceptions states, it appeared that, at the time of the killing, and for some time before, the defendant and the deceased were living together as man and wife, on a plantation in the southern part of Montgomery county, which belonged to Walters Brothers, or was cultivated by them; that screams were heard to proceed from the cabin occupied by them, on the night of March 23d, 1887; that the defendant was seen, early the next morning, coming towards the cabin, from the direction of some woods about a half-mile or more distant; that he borrowed some money on the night of that day from Mr. Duncan Walters, saying that the deceased had left him, and that he wanted to go after her; that search was instituted for the deceased on the next day, and her body was found in the woods, "burned almost beyond recognition, and with her skull fractured;" that the defendant was arrested, a day

[Steele v. State.]

or two afterwards, on a plantation about ten miles distant, which was also controlled by Walters Brothers; that being charged with the murder when arrested, and asked to tell all he knew about it, "he declined to make any statement, but said that he would tell Mr. Duncan Walters all about it." Said Walters, being then examined as a witness, testified that the defendant, "being in a closed room with him and his brother, and being asked to tell all he knew about the matter, and to tell the truth, made in substance the following confession: '*That he struck the deceased with an axehelve, during a quarrel between them, and the blow killed her almost instantly; and that he carried her body, she being dead, to the woods about a mile from the house,*' where it had been found, '*and there burned it;*' and the witness stated, "that no threat had been made, nor any inducemement held out to the defendant in any way whatever, to induce a confession." The witness further testified, on cross-examination, that the defendant's first statement was, "*that the deceased did not die in the house, and was not carried thence by him to the place where it was found, but that she ran out of the house on receiving the blow, and walked very near to the place where her body was found, and there died; that he followed to where she fell, took her head in his lap, and tried to bring her back to life, but she died in a few minutes;*" that he (witness) then told defendant, "that this statement would not be believed—that it was an impossibility for a woman to walk that distance with her skull fractured, and physicians would be put on the stand who would so swear; and that he must tell a straighter tale than that, if he hoped to be believed;" that the defendant "thereupon became sullen, would look at him and show his teeth, would not proceed at all for some time, and then hesitatingly gave the statement first above mentioned." It was shown, also, "that the witness was the employer of the defendant; that the relation of landlord and tenant had existed between them for more than a year, and that the arrest of the defendant had been made by parties acting under the instructions of the witness." On this evidence, the defendant moved the court to exclude from the jury "that part of the confession stating that the deceased died in the house, and had been removed by the defendant to the woods;" and he excepted to the overruling of his objection.

The defendant adduced proof of his own peaceable character, and evidence showing the quarrelsome and violent

character of the deceased; and offered to prove by Adam Anderson, "that the deceased was a violent woman, was at one time imprisoned in the jail of Lowndes county for assault and battery; also, that he (witness) had once lived with her, and had discontinued the association on account of her violent and desperate character, believing that, if he lived with her any longer, he would have to kill her, or she him." The court excluded all the testimony of this witness, on objection by the State, and defendant excepted. Jack Davis, another witness for the defendant, testified, "that he had lived with the deceased for several years, and finally had to quit her on account of her violent disposition." The court excluded this evidence, also, on objection by the State, and the defendant excepted.

The defendant requested two charges, which are thus stated in the bill of exceptions: "The following charges in writing were asked and refused: '(1.) If the jury find that a fracture of the skull on the back of the head may be produced by a blow on another part of the head, this will be sufficient to leave it doubtful as to what part of the head it was on which the blow in this case was inflicted.' Exception was taken. '(2.) In looking to the condition of the skull of the deceased, the jury will look at the fact, that the condition of the skull on which the prosecution asks them to presume that the blow was delivered on the back of the head, is testified to by witnesses unskilled in medicine or anatomy; also, that if skilled medical experts have testified that the condition of the skull described by the witnesses could have been caused by a blow delivered on the front part of the head, the jury must look at this testimony, and it is entitled to great weight; and they may also look at corroborating testimony furnished by the defendant, as the broken knife, and the scars on his hand. The foregoing bill of exceptions is signed in term time."

As to the organization of the petit jury the bill of exceptions contains the following recital: "The regular *venire*, a copy of which had been served on the defendant, having become exhausted before a jury was obtained, the presiding judge drew a sufficient number of names from the petit-jury-box to complete said jury. Some of the names so drawn were put on the list given to the sheriff to be summoned, and some were returned to the box, the latter being the names of persons who resided more than two miles from the court-house, as judicially ascertained by the court. All this was

done in open court, and in the presence of the defendant and his counsel, but without specially informing him as to which names were returned to the box, and which were given to the sheriff to be summoned; but the names of the persons drawn and summoned were furnished to the defendant, before he was required to accept or reject said persons as jurors. For this no reason was given, and the defendant excepted to the action of the court."

JOE CALLOWAY, and BENJ. MICOU, for appellant.

THOS. N. MCCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—The defendant was convicted of murder in the first degree, for the killing of one Lou Anderson, by striking her with an axe, and was sentenced to be hung.

1. The first exception to the action of the trial court, presented by this appeal for our consideration, relates to the organization of the petit jury under the act approved February 21st, 1887, entitled "An act to more effectually secure competent and well qualified jurors in the county of Montgomery."—Acts 1886–7, pp. 190–197. The case being a capital one, the court had made the requisite order for summoning a special *venire* of fifty jurors, in the mode required by the act. At the time appointed for the trial, it appeared that a jury could not be impanelled from those who, being summoned, had appeared; and the court proceeded, under the authority conferred by section 10 of the act, to draw from the petit-jury-box a sufficient number of names to complete the jury. This section provides, that "should any juror so drawn reside more than two miles from the court-house, the said juror may, in the discretion of the presiding judge, be relieved from attendance on said trial." The names of several jurors were drawn, and some of them were judicially ascertained to reside over the designated distance from the court-house. They were accordingly relieved, and their names laid aside. All this occurred in open court, and, therefore, presumptively in the presence of counsel. The objection, as we understand it from the bill of exceptions, is, that the court did not "specially inform" defendant's counsel, as to the names of the persons who were thus excused within the discretion of the court. It is not shown that their names were not called sufficiently audible to have

[Steele v. State.]

enabled counsel to hear them by proper attention. Nor is it stated that the court was requested to inform counsel as to who such persons were; nor that it was proposed to make any issue as to the truth of the facts judicially ascertained by the court. The exception generally to the action of the court is, therefore, too vague for consideration. To put the court in error, its action should have been specially invoked, by requesting the names of the jurors who were excused, followed by a proposal to contest the fact that they resided more than two miles from the court-house.

2. We see nothing in the circumstances attending the confessions, as made to the witness Duncan Walters, that authorizes their exclusion from evidence on the ground that they were not voluntary. This witness states, that no threat was made, or inducement held out in any way whatever, to elicit such confessions. All that is shown to rebut this is, that the prisoner was in a closed room, with a brother of the witness, and, being asked to tell the truth, had first made a statement as to the circumstances of the killing, which might well be deemed improbable. Upon being told, however, by the witness, that the story was impossible, and would not be credited—that physicians would be put on the stand to refute it, and that "he must tell a straighter tale than that if he hoped to be believed"—he made the confessions to the admission of which exception is taken. The only inducement, which, it seems to us, was held out to the prisoner, was simply one to tell the truth, and the only fear presented to his mind was the fear of being detected in a falsehood. This, under all the authorities, is no such inducement, through hope or fear, as would operate to exclude the confessions.—*Redd v. State,* 69 Ala. 255; *King's case,* 40 Ala. 314; *Aaron's case,* 37 Ala. 106; Whart. Cr. Ev., §§ 647, 672; *Sands v. State,* 80 Ala. 201.

3. The court did not err in excluding the statement of Adam Anderson, which was proposed as a whole to be admitted in evidence in behalf of the defendant. This statement related to the question of the character of the deceased, and a part of it was possibly competent, as tending to show that such character was bad for violence. But other parts of it related to *specific facts,* not to general reputation; as for example, that deceased "was at one time imprisoned in the Lowndes county jail," and "had been imprisoned in the State of Florida for assault and battery;" and these facts were not admissible. While one's character or reputation

[Smith v. The State.]

may be assailed, by showing a general bad repute in the neighborhood of his residence, or where he is known, *particular acts* of bad conduct, or special circumstances of disgrace, are not admissible for such purpose on direct examination, although they often may be on cross-examination by the opposite party.—*Jones v. State*, '76 Ala. 9; *Jackson v. State*, 78 Ala. 471; 1 Greenl. Ev. (14th Ed.), § 55; Whart. Cr. Ev. (8th Ed.), §§ 58–61. The same rule would exclude the testimony of the witness Davis, who proposed to state that he "had lived several years with the deceased, and that finally he had to quit her on account of her violent disposition."

4. The two charges requested by the defendant obviously invaded the province of the jury. It was not for the court to say what evidence was "sufficient" to establish a certain fact; nor was it within the judge's sphere to instruct the jury that any part of the evidence was "entitled to great weight." No exception, moreover, appears to have been taken to either of these charges.

Counsel are mistaken in the suggestion, that the evidence contained in the record fails to show that the offense charged was committed in the county of Montgomery, and before the finding of the indictment. The record clearly discloses both of these facts.

We discover no error of any kind in the record, and the judgment is affirmed. And it appearing from the record that the day appointed for the execution of the sentence of death, imposed by the judgment of the City Court, has passed, it is accordingly ordered and adjudged, that, on Friday, the 16th day of March, 1888, the sheriff of Montgomery county proceed to execute the sentence of the law, by hanging the said Tarleton Steele by the neck until he is dead, in obedience to the judgment and sentence of said City Court, as herein affirmed.