STATE OF IOWA, Appellee, v. L. G. WILLING, Appellant.

**Arson: MALICE: INSTRUCTION.** The statutes make both willful-
1 ness and malice essential elements of the crime of arson, and
an instruction which ignores the necessity for the State to
prove malice is erroneous.

**Reasonable doubt: INSTRUCTION.** On the question of reasonable
2 doubt the definition approved in *State v. Ostrander,* 18 Iowa,
435, is considered and upheld.

**Confessions.** A confession of a crime shown to have been made
3 to a witness under duress is not admissible in evidence.

**Same: INSTRUCTION.** An instruction that if a confession was un-
4 derstandingly made, correctly remembered and repeated by the
witness it is "entitled to great weight" is erroneous as usurp-
ing the province of the jury.

*Appeal from Blackhawk District Court.*— HON. A. S. BLAIR,
Judge.

SATURDAY, NOVEMBER 18, 1905.

INDICTMENT and conviction upon charge of arson, and
the defendant appeals.— *Reversed.*

*A. B. Switzer* and *Chamberlin & Peterson,* for appel-
lant.

*Chas. W. Mullan,* Attorney General, and *L. De Graff,*
Assistant Attorney General, for the State.

WEAVER, J.— The appellant was jointly indicted with
one Harry Allendorf upon the charge of "unlawfully, will-
fully, maliciously, and feloniously" burning in the nighttime
a certain store owned by one M. H. Loomer. A reversal of
the judgment against him is asked upon several grounds.

I. Objection is made to the definition of reasonable

doubt, given by the court to the jury.  The paragraph of
the charge to which reference is made embodies in substance

2. REASONABLE
DOUBT:
instruction.

the definition of reasonable doubt which this
court approved in *State v. Ostrander*, 18 Iowa,
435.  That precedent has been too often cited
and followed as authority to be now lightly overthrown.  It
may be conceded that this definition is not wholly satisfac-
tory, and that no attempt yet made to define the phrase is
wholly beyond criticism.  Indeed, in the opinion of the
writer, these words are in themselves so simple, clear, and
expressive that attempts to state the idea conveyed by them
in other terms tends to confusion rather than simplification,
but it is the long and well-established practice in trial courts
to elaborate the meaning in various forms for the supposed
benefit of the jury, and the instruction given in the present
case is substantially such as we have frequently sustained.

II.  The statute under which appellant was indicted
makes both willfulness and malice essential ingredients of
the crime of arson.  Code, sections 4776–4780.  In defining

1. ARSON:
malice:
instruction.

malice the court told the jury that it " does not
mean hatred or ill will against the owner of
the property, but it means the intentional doing
or a wrongful act," and this charge is assigned as error.
While the words " willful " and " malicious " are not easy
of exact definition, and the attempts to distinguish between
them have not always been happy or instructive, the statute
treats them as denoting distinct ideas, and this court has held
that a charge of willfulness does not include, nor is it the
equivalent, of a charge of malice.  *State v. Lightfoot,* 107
Iowa, 344; *State v. Gould,* 40 Iowa, 372.  If this be the
case, it follows of necessity that a definition of malice which
is identical with the accepted definition of willfulness is in-
correct, and this, we think, is the vice of the instruction
under consideration.  The " intentional doing of a wrong-
ful act " is not necessarily a " malicious " act.  Every vol-
untary act of a human being is intentional, but, generally

speaking, a voluntary act becomes willful in law only when it involves some degree of conscious wrong or evil purpose upon the part of the actor, or at least an inexcusable carelessness or recklessness on his part, whether the act be right or wrong. *Werner v. Flies,* 91 Iowa, 149; *Parker v. Parker,* 102 Iowa, 500. If, however, we are to construe the word " intentional " in this instruction as including the idea of conscious wrong or evil design, it is apparent that, under the precedents cited, we have a definition of " willfulness," but not of " malice." Without pausing for any elaborate discussion of the distinction, we may say that in general a " malicious " act involves all that is usually understood by the term " willful," and is further marked by either hatred or ill will toward the party injured, or by such utter recklessness and disregard of the rights of others as denotes a corrupt or malevolent disposition.

It is true that malice may be and is often implied or presumed from the willfulness of the wrongful act. The State cannot enter into the heart and mind of the accused and prove his designs and motives by direct evidence, but when it has established the evil act itself, and shown to a moral certainty that it was done voluntarily and willfully the inference of malice is ordinarily inevitable. In our judgment, therefore, the instruction given by the trial court upon this feature of the case was defective. It could, perhaps, be fairly said, and we should be inclined to hold, that the error here adverted to was without substantial prejudice to the appellant, did not the charge as a whole seem to ignore the legal necessity which the State was under to establish malice as an essential element of the crime. It is true that the sixth and seventh paragraphs of the charge contain a correct abstract definition of arson, but in applying the law to the case at bar, and instructing upon the facts which must be found to justify a conviction, the court nowhere says to the jury that they must find that the alleged act was committed with malice, but does say in the fourteenth and

fifteenth paragraphs, without qualification, that defendant is to be convicted if the jury find beyond reasonable doubt that he set fire to the building, or aided or abetted in setting said fire with intent to burn it, making no reference to the willful or malicious character of the act. The defendant was on trial for one of the gravest offenses known to the law. The case made against him, as reflected by the printed record, exhibited many features of seemingly doubtful and inconclusive character, and it was a matter of the highest importance that it be submitted to the jury with an adequate and clear exposition of the rules of law which should govern their deliberation. In the respects here noted we think the appellant's exceptions to the charge of the court must be sustained.

III.  The State was allowed to prove alleged confessions made by the appellant to the mayor of the city and the sheriff. This evidence was submitted to the jury with an **3. Confessions.** instruction that if they found that such confession was given under the promise of benefit, or extracted from him by any threat, such confession should be given no consideration in reaching a verdict. The record indicates without dispute that the alleged confession to the mayor was extracted from the defendant under duress, and we think it should not have been admitted in evidence, and, having been admitted, should have been wholly withdrawn from the jury.

In this connection we may also say that the court, instructing the jury upon the matter of alleged admissions by the defendant, said to them that if such admissions were **4. Same: instruction.** shown to have been understandingly made, and to have been correctly remembered by the witnesses, and substantially repeated by them on the witness stand, they were " entitled to great weight." In so doing we think the court inadvertently trenched upon the domain of the jury. The admissibility in evidence of any given fact or circumstance having been determined by the court,

it is for the jury alone to determine whether it shall be given great or little weight. *State v. Crofford,* 121 Iowa, 395; *Steele v. State,* 83 Ala. 20 (3 South. Rep. 547); *People v. Ah Sing,* 59 Cal. 400; *Boyer v. State,* 93 Tenn. 216 (23 S. W. Rep. 971). The farthest we think this court has gone in the direction of the instruction here in question is to approve an instruction embodying the proposition of Greenleaf (volume 1, section 200) that admissions, though generally to be received and considered with caution, yet, when clearly identified and proved, "are often the most satisfactory evidence." *Martin v. Algona,* 40 Iowa, 390. This statement goes to the border line between the province of the court and the province of the jury, and we are not willing to enlarge the rule to the extent required for an approval of the instruction given by the trial court. Our attention is called to no precedent among our cases for thus determining the weight of evidence as a matter of law, and we are not disposed to establish one.

IV. Counsel for appellant urgently insist that the record presents no competent evidence upon which a verdict of guilty can be sustained, but in view of a new trial being ordered on other grounds, and the possible development of other testimony bearing upon the merits of the case, we think it proper to refrain from expressing any opinion on the point here raised.

Other exceptions argued are either not well taken, or are such as are not likely to arise upon another trial, and we, therefore, omit further reference to them. For the reasons stated, the judgment of the district court is reversed, and the cause is ordered remanded for a new trial.— *Reversed.*