THE STATE OF KANSAS v. CHARLES WORTMAN.

No. 15,878.   ( 98 Pac. 217.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Grand Larceny—Theft of Harness.* To warrant a conviction under the statute making the theft in the night-time of "any . . . harness" grand larceny (Laws 1903, ch. 218, § 1), it is not necessary that the property stolen comprise all the parts of a complete harness.

2. ——— *Confessions—Weight.* In a criminal case it is not material error to instruct that a confession voluntarily and deliberately made furnishes evidence of the highest character against the person making it, when the jury are also told that they are to determine the weight to be given to the evidence on the subject.

Appeal from Neosho district court; JAMES W. FINLEY, judge. Opinion filed November 7, 1908. Affirmed.

*Fred S. Jackson,* attorney-general, and *B. H. Grigsby,* county attorney, for The State; *W. R. Kline,* and *J. Q. Stratton,* of counsel.

*J. I. Sheppard, Charles Denison,* and *C. B. Griffith,* for appellant.

The opinion of the court was delivered by

MASON, J.: Charles Wortman was convicted upon a charge of stealing harness in the night-time, and appeals. The statute reads:

"Every person who shall be convicted of feloniously

stealing, taking or carrying away . . . in the night-time any domestic fowls, harness, or saddles, belonging to another, shall be deemed guilty of grand larceny." (Laws 1903, ch. 218, § 1.)

In the information and evidence the stolen property was described as certain enumerated straps and buckles, referred to as pieces of harness, not including any bridle, collar or traces. The defendant insists that the offense created by the part of the statute here involved can only be committed by taking a substantially complete harness, that is, all of the equipment used (or adapted for use) upon a single draft animal or upon a team—what is sometimes called a "set" of harness. We think, however, that the legislature employed the phrase "any . . . harness" as descriptive of the class of articles forming the gear by which a vehicle is drawn, as it might have covered all wearing apparel by the use of the phrase "any clothing." The purpose of the act was to give additional protection to certain kinds of property by making the theft thereof at night a felony, regardless of value. The gravity of the offense is fixed by the hour of its commission and by the character of the thing taken—not by its quantity. To suppose that the nocturnal theft of material properly described as harness was not to be a felony unless enough were taken to make a complete assortment would be so inconsistent with the manifest intention of the new act that such a construction would only be justified if the language employed affirmatively so indicated—for instance, by denouncing in terms the theft of "a harness."

The defendant also asserts that there was no evidence that the stolen property was taken in the night-time. The owner testified that it was in its usual place after dark on March 19, 1907, and was missed about half past six or seven o'clock on the next morning. If anything further was necessary it was supplied by the statement of another witness that some kind of a disturbance was heard about the premises during the night. The time of the commission of an offense, when

material, is ordinarily shown by circumstantial evidence.   (6 Cyc. 243.)

Error is assigned on account of the failure of the court to give instructions as to where the line between day and night was to be drawn, and as to the state's obligation to prove beyond reasonable doubt that the stolen property was taken at night.   No specific instructions were asked, and, at least in the absence of such a request, there was no occasion of any mention of the first matter, and the second was sufficiently covered by the general charge.

The final complaint is based upon the giving of this instruction:

"Should you find from the evidence that the defendant voluntarily and deliberately confessed his guilt of the theft of the harness alleged to have been stolen in the information, such confession, if made under the circumstances I have indicated, furnishes evidence of the highest character against him.   But it is for you to say, as a question of fact, whether or not the defendant voluntarily and deliberately confessed the taking of said harness, and if you should find from the evidence that the defendant made such confession you may properly consider the time, place and circumstances under which such confession was made, and all the attending circumstances, for the purpose of determining what weight you should give to such confession, in case you find a confession was in fact made, as above indicated in this instruction."

There is no room for doubt that a confession deliberately and voluntarily made is in fact evidence of the highest character against the person making it.   The expressions of opinion to the contrary are well explained by Professor Wigmore in a full discussion of the subject, the substance of which appears from these excerpts:

"There exists a decided conflict of opinion, at first sight inexplicable, as to the evidential value of confessions.   On the one hand, we find writers and judges of wide experience affirming the slender value of confessions and urging the greatest caution in their use.

54—78 KAN.

. . . On the other hand, we find persons of equal authority offering [affirming] in equally positive and unqualified language, that confessions are the highest kind of evidence. There must be some key to this conflict. . . . The real explanation lies in the mixture of good and bad qualities likely to be present in all attempts to use confessions. We must separate (1) the confession as a proved fact, from (2) the process of proving an alleged confession. (1) Now, assuming the making of a confession to be a completely proved fact— its authenticity beyond question and conceded, then it is certainly true that we have before us the highest sort of evidence. The confession of a crime is usually as much against a man's permanent interests as anything well can be; and, in Mr. Starkie's phrase, no innocent man can be supposed ordinarily to be willing to risk life, liberty or property by a false confession. Assuming the confession as an undoubted fact, it carries a persuasion which nothing else does, because a fundamental instinct of human nature teaches each one of us its significance. (2) But how do we get to believe in the fact of a confession having been made? Always and necessarily by somebody's testimony. And what is our experience of that sort of testimony on which we are asked to believe that a confession was made? A varying and sometimes discouraging experience. Paid informers, treacherous associates, angry victims, and overzealous officers of the law—these are the persons through whom an alleged confession is often, perhaps oftenest, presented; and it is at this stage that our suspicions are aroused and our caution stimulated. . . . We are ready enough to trust the confession if there really was one, but we are going to doubt and suspect for a long time before we accept it as a fact. . . . This seems to be the simple explanation of the apparently contradictory views; if we distinguish the confession as evidence from the evidence of the confession, we find that few have ever really doubted that the first is in itself of the highest value, while the second is always to be suspected." (1 Wig. Ev. § 866.)

But it is argued that to pick out any particular item of evidence and characterize it as entitled to special consideration is to invade the province of the jury, and that such an instruction as that complained of is objec-

tionable on that account. Decisions in Texas and Mississippi go to that extent, but they are based upon statutes forbidding the trial court to express an opinion upon the weight of the evidence. (*Morrison v. The State,* 41 Tex. 516; *Thompson v. State,* 73 Miss. 584, 19 South. 204.) On the other hand it has been held that the giving of substantially such an instruction is not material error. (*Welsh v. The State,* 96 Ala. 92, 11 South. 450; *Hester v. The State,* 17 Ga. 146; *State v. Brown,* 48 Iowa, 382.) The case of *Martin v. The Town of Algona,* 40 Iowa, 390, is somewhat similar to the one last cited. It is criticised as going to the border line, but not disapproved, in *State v. Willing,* 129 Iowa, 72, 105 N. W. 355, where this language was used:

"The court, instructing the jury upon the matter of alleged admissions by the defendant, said to them that if such admissions were shown to have been understandingly made, and to have been correctly remembered by the witnesses, and substantially repeated by them on the witness-stand, they were 'entitled to great weight.' In so doing we think the court inadvertently trenched upon the domain of the jury. The admissibility in evidence of any given fact or circumstance having been determined by the court, it is for the jury alone to determine whether it shall be given great or little weight." (Page 75.)

A statement made by the judge may be logically sound and yet tend unduly to influence the jury by giving too much prominence to some particular feature of the evidence. But we do not think that situation is presented here. What was said in the charge about the probative value of a voluntary confession was unquestionably true, although the rule announced was perhaps one of common sense rather than of positive law—of persuasive rather than of compelling force. But the jury were explicitly told that it was for them to determine what weight should be given to the evidence on this subject. Plainly no substantial prejudice resulted to the defendant.

The judgment is affirmed.