**Elvin BAILEY and Sonya Bailey, Individually and as Husband and Wife, Appellees,**

v.

**Jennifer LANCASTER, Lon Lindenberg, Paul Magnussen, Jim Wallace, Lowell Joslin, All Individually and as Employees of the State of Iowa, in their Official Capacities, Appellants.**

No. 89–961.

Supreme Court of Iowa.

May 15, 1991.

Rehearing Denied June 19, 1991.

**354**

Thomas J. Miller, Atty. Gen., and Shirley A. Steffe, Asst. Atty. Gen., for appellants.

William J. Conroy, Jr., Des Moines, and Patrick M. Carpenter, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER, and LAVORATO, JJ.

SCHULTZ, Justice.

Plaintiffs Elvin Bailey and Sonya Bailey, a husband and wife, brought an action against defendants, a group of state employees who were all conservation officers for the State Conservation Commission (commission). Plaintiffs claim damages arising out of defendants' search of their residence. The search of plaintiffs' residence was carried out pursuant to a warrant which authorized a search for "[g]inseng plants or parts of, or ginseng roots or parts of, or ginseng seeds or berries."

Plaintiffs' original petition contained numerous theories of recovery set out in separate counts. Some of these counts were dismissed either voluntarily by plaintiffs or by the court. Consequently, only one count was submitted to the jury. This count claimed damages under 42 U.S.C. section 1983 (1981), on the basis of an illegal search and seizure. The jury returned a verdict for $17,800 in favor of plaintiffs against five defendants—conservation officers Jennifer Lancaster, Lon Lindenberg, Paul Magnussen, Jim Wallace, and Lowell Joslin.

Ginseng is a plant that grows in forested areas. Its roots are dug, dried, and sold for sums of up to $200 per pound. This herb is exported to the Orient where it is used as a medicine. Harvesters of ginseng are usually secretive about their enterprise and the location of their finds.

The legislature authorized the commission to establish a program governing the harvesting and sale of American ginseng and established September 15 to November 1 as the permissible time period for harvesting wild ginseng. Iowa Code § 107.24(11) (1985).[1]

---

1. This section provides:
   **Specific powers.**
   The commission is hereby authorized and empowered to:
   ....
   11. Establish a program governing the harvesting and sale of American ginseng subject to the convention on international trade in endangered species of wild fauna and flora and adopt rules providing for the time and conditions for the harvesting of the ginseng, the registration of dealers and exporters, the records kept by dealers and exporters, and the certification of legal taking. The time for harvesting of wild ginseng shall not begin before September 15 or extend beyond November 1.

   Rules adopted by the commission which were effective in 1985 and are pertinent to this appeal are set out in 290 Iowa Administrative Code chapter 21 (renumbered and transferred to Natural Resource Commission 571 Iowa Administrative Code chapter 78, effective 12/31/86) as follows:
   CHAPTER 21—REGULATED HARVEST AND SALE OF AMERICAN GINSENG
   **290—21.1(107) Definitions.** The following definitions apply in these rules unless the context clearly signifies a different meaning.
   1. *"American ginseng"* means Panax quinquefolius and includes that which is cultivated and that which is grown in the wild.
   ....

The events which preceded the search of plaintiffs' residence occurred in northwest Iowa. On August 25 and September 2 of 1985, a black jeep with Polk county license plates was seen by defendant Magnussen, a conservation officer from Sioux Rapids, Iowa. The jeep was seen on roads north and west of Sioux Rapids near heavily wooded areas. On September 2, Magnussen approached the vehicle after it stopped and found three men and a boy inside. Even though he observed muddy spades and clothing in the jeep, he saw no ginseng. Magnussen learned that the occupants of the jeep were staying at a nearby motel in a room registered to plaintiff Elvin Bailey.

Later, Magnussen learned that the jeep's owner and Elvin Bailey had dug ginseng in the past. Magnussen was suspicious that the men were digging ginseng roots out of season. He sought assistance from other conservation officers, including defendant Jim Wallace, to check the nearby wooded areas. They located places where wild ginseng had been harvested near areas where the jeep had been seen.

After they completed their local investigation, Magnussen and Wallace traveled to Polk county where they contacted a superior and requested permission to obtain a search warrant. On September 11, 1985, these two officers were assisted in preparing documents for a search warrant application by Polk County officers Lancaster and Lindenberg and an assistant county attorney. The application was presented to a district associate judge in Polk county who issued a warrant permitting a search of plaintiffs' residence.

On the same date, September 11, 1985, Magnussen, Lindenberg and other officers, who are not defendants in this action, executed the warrant. Joslin, a supervisor of the Polk county conservation officers, went to plaintiffs' residence sometime during the execution of the warrant. Lancaster went to the residence to help inventory the evidence at the end of the search.

When the officers arrived at the residence, Elvin Bailey took the officers to a room containing ninety-four pounds, or 7,777 roots, of ginseng which were being dried on racks. Elvin Bailey maintained that the ginseng was dug from patches that he planted on his own farm. He denied that the ginseng came from northwest Iowa. He also led the officers on an inspection tour of his farm. However, his explanation and tour did not satisfy the officers. The officers then seized the ginseng and stored it in a locked freezer. The officers also seized an unregistered canoe.

Four months later, on January 10, 1986, Elvin Bailey was issued a citation for illegal possession of ginseng. The State voluntarily dismissed this charge on July 8.

Meanwhile, Bailey filed a claim for the return of the ginseng and the canoe. In March 1986 another district associate judge ordered the return of the seized items based on its finding that the search warrant application did not show sufficient probable cause for its issuance. The district court affirmed this ruling in November 1986. The district court also rejected the State's claim that the ginseng was forfeitable property. The State did not appeal this ruling and the ginseng was returned in February 1987.

Plaintiffs' section 1983 action alleged that defendants' conduct effectively deprived them of their constitutional rights. The trial court specified and submitted to the jury four allegations of defendants' misconduct as follows: (1) Making material false representations or intentionally omitting a material fact in obtaining the search warrant; (2) exceeding the scope of the

**290—21.2(107) Season for legal harvest and root retention.**

**21.2(1)** Persons may dig American ginseng in Iowa, for purposes of marketing, from September 15 to October 31 of each year. This does not include digging on one's own property for personal use.

**21.2(2)** American ginseng roots may be retained by the digger until March 1 of the following year for purposes of drying or speculation. Roots retained beyond this date must be declared and the commission notified in writing.

In this case we need not pass on the issue of whether it is unlawful to harvest domesticated ginseng during the period stated in Iowa Code section 107.24(11).

search warrant; (3) executing the search warrant in an unreasonably severe manner; and (4) failing to properly care for the seized property through wrongful intent or gross negligence.

The trial court refused defendants' request that special verdict forms, appropriate to each defendant and each alleged civil rights violation, be submitted to the jury. Rather, the court submitted an instruction and a special verdict form that allowed plaintiffs to recover against all defendants collectively by merely showing that the conduct of one defendant violated any one of the four alleged civil rights violations and caused plaintiffs' damages. Stated otherwise, the verdict form did not recognize the possibility of each defendant's separate liability based on the four separate alleged violations.

On appeal, defendants maintain that the trial court erred by: (1) Overruling their motion for directed verdict; (2) giving inappropriate jury instructions; (3) denying their motion for judgment notwithstanding the verdict; and (4) denying their motion for a new trial. Plaintiffs filed a cross-appeal in which they present no additional issues.

■ I. *Elements of a section 1983 action.* Plaintiffs rely on 42 U.S.C. section 1983 (1981), which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Under section 1983 a plaintiff must show that the defendant (1) deprived plaintiff of a right, privilege, or immunity secured by the United States Constitution, and (2) acted under color of state law. *Christenson v. Ramaeker*, 366 N.W.2d 905, 907 (Iowa 1985). In this case, there is no question that the defendants were acting under color of state law. Thus, the issue becomes whether or not plaintiffs suffered damages as a result of a constitutional deprivation.

■ Federal due process protections under the fourteenth amendment which are redressable under section 1983 fall into three categories. In *Willson v. City of Des Moines*, 386 N.W.2d 76, 80–82 (Iowa 1986), we examined these categories in detail. Quoting from *Daniels v. Williams*, 474 U.S. 327, 337, 106 S.Ct. 662, 677–78, 88 L.Ed.2d 662, 672 (1986) (Stevens, J., concurring), we reviewed the sources of these three different types of constitutional protections as follows: (1) Specific protections defined in the Bill of Rights, such as protection from unreasonable searches and seizures under the fourth amendment; (2) substantive due process, which prohibits certain arbitrary government actions regardless of the fairness of the procedures; and (3) procedural due process, sometimes referred to as the guarantee of fair procedure. *Willson*, 386 N.W.2d at 80. In any section 1983 action, a plaintiff must still prove a violation of the underlying constitutional right. The elements of proof and the defenses must be tailored to fit the particular constitutional guarantee that has allegedly been violated.

Applying these due process protections to the facts of this case, the State and its officials were required to respect the guarantees of the fourth amendment and refrain from taking arbitrary action which affected plaintiffs' property rights. In this case, plaintiffs specify that their right to be free from unreasonable searches and seizures was violated. This claim is a specific protection defined in the Bill of Rights which has been incorporated into the fourteenth amendment. In addition, plaintiffs claim that they were deprived of their property as a result of the improper storage of the seized ginseng allegedly caused by defendants' gross negligence and wrongful intent. This is a claim of arbitrary government action in improperly storing the seized ginseng and is a substantive due process claim. We now address each claim and the respective elements of proof.

II. *Fourth amendment claims.* Plaintiffs allege misconduct by defendants in

both applying for and executing the warrant. The fourth amendment provides separate protections for the issuance of a warrant and for the security of people against unreasonable search and seizures. We will address these separate protections in turn.

■ A. *Application for a warrant.* The question concerning the issuance of the warrant is narrow. In their appellate brief, plaintiffs note that the district court, in a separate action, held that the warrant was issued without probable cause. However, the trial court in this case did not have this issue before it. Furthermore, prior to trial, plaintiffs limited this constitutional claim to an allegation that defendants misrepresented or omitted material facts in obtaining the search warrant. Consequently, on this appeal, we only address issues regarding defendants' misrepresentation or omission of material facts which were raised before the trial court. *State v. Moorhead,* 308 N.W.2d 60, 64 (Iowa 1981).

The fourth amendment demands a factual showing sufficient to show probable cause for the issuance of a search warrant. A truthful showing is required "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks v. Delaware,* 438 U.S. 154, 164–65, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667, 678 (1978). The Supreme Court has established that an affidavit supporting the application for a search warrant is afforded a presumption of validity unless a showing can be made that there was deliberate falsehood or reckless disregard for the truth in the application for a warrant. *Id.* at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.

The Supreme Court has established standards for challenging the presumption of a supporting affidavit's validity. To obtain an evidentiary hearing on the issue of insufficient probable cause, a challenger must make a preliminary showing of a deliberate falsehood or reckless disregard for the truth on the part of the affiant. *Id.* This preliminary showing must be more than conclusory and supported by more than a mere desire to cross-examine. *Id.*

"Allegations of negligence or innocent mistakes are insufficient." *Id.* Furthermore, false statements will not invalidate the warrant if the false statements are not necessary to a finding of probable cause and do not remove the factual support that is essential to the probable cause finding. *Id.* at 172, 98 S.Ct. at 2684–85, 57 L.Ed.2d at 682.

The standards in *Franks* were established in the context of a suppression hearing. However, we believe the same standards are also applicable in a section 1983 damage action in which a deprivation of constitutional rights has been claimed. *See Malley v. Briggs,* 475 U.S. 335, 344, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271, 280 (1986); *Krohn v. United States,* 742 F.2d 24, 26 (1st Cir.1984). In a section 1983 action, the plaintiff has the burden to prove that the defendant's conduct violated the plaintiff's constitutional rights. *Christenson,* 366 N.W.2d at 912. To overcome the presumption of a search warrant's validity in an unreasonable search and seizure claim, plaintiffs have the burden to show that there was a deliberate falsehood or reckless disregard for the truth in defendants' application for the search warrant.

We now turn to plaintiffs' specific allegations of material omissions and false representations on the part of the defendant-officers and the evidence they present in support of these allegations. Plaintiffs' allegations are primarily directed at Magnussen as affiant. In his supporting affidavit, Magnussen stated that on September 2, 1985, in Clay County he observed a black jeep owned by a Polk County resident·on Highway 10 and followed it for approximately one mile at a slow speed. He stated that the vehicle "pulled over and stopped on the north side of the highway...." Plaintiffs claim that Magnussen's remark in a deposition taken three years after the event creates a discrepancy. When Magnussen was questioned concerning whether he had seen anyone walking out of the woods with spades, he denied seeing anyone walking out of the woods but stated that he first saw the men in a wooded area of Highway 10 "where I stopped the ve-

hicle." Later in the deposition, Magnussen referred to the vehicle being stopped without referring to who stopped it. Plaintiffs urge that Magnussen made an unjustified stop of the vehicle, which if known to the magistrate, would have prevented the magistrate's issuance of the warrant. However, plaintiffs did not call any of the four occupants of the vehicle as witnesses to contradict Magnussen's affidavits. We find that Magnussen sufficiently clarified these alleged discrepant remarks.

Other claimed discrepancies, such as the number of motel rooms registered to the plaintiff Elvin Bailey, Elvin's status as a ginseng dealer in 1985, lack of a phone record, and various matters concerning the search of the areas where ginseng grew, are neither supported by the evidence presented nor rise to a showing of substantial evidence of a material omission or falsity.

Unlike the issue in *Franks*, the issue in this case is whether a factual issue exists for jury determination rather than the availability of an evidentiary hearing to suppress evidence. Based on our review of the record, we hold that plaintiffs have not shown a deliberate falsity or reckless disregard for the truth sufficient to overcome the presumption of the validity of the search warrant's supporting affidavit. Plaintiffs' allegations of material omissions and false representations are not supported by substantial evidence that satisfies the *Franks* standard of a deliberate falsehood or reckless disregard for the truth. Consequently, the trial court should have sustained defendants' motion for a directed verdict and withdrawn this issue from jury consideration.

B. *Execution of the warrant.* Plaintiffs made constitutional challenges to the scope and manner of the search. Plaintiffs complain that the search was too extensive and too long. Specifically, they claim that an officer exceeded the terms of the warrant by checking the serial numbers of guns and seizing a canoe. In addition, they contend that the officers left a significant mess, damaged their property, broke numerous items, and moved a CB radio.

■ The fourth amendment protects people "against unreasonable searches and seizures...." U.S. Const. amend IV. "From the moment of entry until the moment of departure, appellees' [officers'] conduct was subject to scrutiny for reasonableness under the fourth amendment." *Duncan v. Barnes*, 592 F.2d 1336, 1338 (5th Cir.1979). Defendants concede that the officers' conduct in executing a search warrant is subject to review and that an officer may face section 1983 liability for executing a warrant in an unreasonable manner. Beyond this concession, however, the parties disagree on the nature of the conduct that is required to trigger a constitutional tort and its accompanying damages under section 1983.

In jury instructions, the trial court submitted theories of recovery against defendants for exceeding the scope of the warrant and in executing the warrant in an unreasonably severe manner. The court then defined these theories by referring to and adopting language from Iowa statutory law. *See* Iowa Code § 808.10 (1985) (providing that execution of a search warrant is a criminal offense if it "willfully exceeds the person's authority" or is exercised "with unnecessary severity...."). Defendants not only objected to the sufficiency of the evidence to meet these theories of recovery, but also carefully objected to individual jury instructions.

■ We agree with defendants that the trial court incorrectly defined the scope and execution of the warrant by reference to Iowa law. This is a constitutional tort rather than one based on a state statute. The fourth amendment expressly prohibits "unreasonable" searches. Thus, its plain language dictates that the standard of prohibited conduct is one of reasonableness. Consequently, drafting instructions at retrial, the trial court must be guided by the language of the fourth amendment which prescribes against "unreasonable searches." The District of Columbia described the standard of reasonableness in a section 1983 claim involving a search as follows:

Whether a search is unreasonable "by virtue of its intolerable intensity in scope," *Terry v. Ohio*, 392 U.S. 1, 18, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968), must be determined by the particular facts of the case, including the scope of the search authorized by the warrant. It is a "long-standing requirement[ ] that the officers remain on the premises only so long as is reasonably necessary to conduct the search and that they avoid unnecessary damage to the premises...." 2 W. LaFave Search and Seizure § 4.10, at 161 (1978).... This is not to suggest that destruction of property necessarily violates the Fourth Amendment. We recognize that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258, 99 S.Ct. 1682, 1694, 60 L.Ed.2d 177 (1979). The touchtone, however, is reasonableness; destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment.

*Tarpley v. Greene*, 684 F.2d 1, 9 (D.C.Cir. 1982). The determination of whether a seizure is reasonable requires a careful balancing of the nature and quality of the intrusion on the individual's fourth amendment interest against the countervailing governmental interest at stake. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443, 455 (1989). "The 'reasonableness' ... must be judged from the perspective of a reasonable officer on the scene...." *Id.*

█ Plaintiffs claim that Iowa Code section 808.10 establishes a due process claim because it is a codification of federal constitutional protections and creates a liberty interest protected by the fourteenth amendment. We recognize that state statutes may create a constitutionally protected liberty interest that may not be arbitrarily abrogated. *Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935, 951–52 (1974). However, the Supreme Court has explained that when a complaint alleges both fourth amendment and due process clause violations in a claim

of excessive force in the course of an arrest, seizure of the person should be analyzed under the "reasonableness standard" of the fourth amendment, rather than under the more generalized notion of substantive due process. *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at 454.

We believe the reasoning in *Graham* is applicable in this case. Plaintiffs' claims regarding execution of the warrant raise the clearer fourth amendment standard of reasonableness of defendants' conduct rather than the less specific standards associated with a claim of a liberty interest violation under the due process clause. Furthermore, we believe that application of the reasonableness standard under the circumstances of this case requires a lesser degree of proof than a statutory claim based on section 808.10. More important, section 808.10 is a criminal statute. Whether it creates a civil cause of action is a debatable issue. Consequently, we reject plaintiffs' suggestion that due process protections elevate the statutory prohibitions in section 808.10 to the status of a constitutional tort.

We now consider defendants' contentions that they were entitled to directed verdicts on the issues concerning the execution of the warrant. Over defendants' objections, the trial court submitted all claims together against all defendants. The court also overruled defendants' motions for a directed verdict based on the insufficiency of plaintiffs' evidence. Defendants renew this claim on appeal and urge that there was no evidence that each individual defendant participated in all of the alleged acts of misconduct.

█ Officers who take no part in the alleged acts of misconduct are entitled to escape liability as a matter of law. *Ramirez v. Webb*, 835 F.2d 1153, 1158–59 (6th Cir.1987). Furthermore, superior officers may not be held liable solely on the basis of vicarious liability. *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir.1986); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir.1979).

In this case, we are unable to find any evidence of misconduct in the execution of the warrant by Wallace, Lancaster, or Joslin. Although there is some evidence that Wallace was at plaintiffs' residence during the evening of the search, there is not substantial evidence that he took part in executing the search of plaintiffs' residence. Lancaster's only action was to help inventory the property after the search was conducted. Although Joslin was the immediate supervisor of Lindenberg and Lancaster, there is no showing that Joslin either encouraged or directly participated in the alleged wrongful acts. Furthermore, there is no evidence that Joslin was deficient in training the officers under him. Under this record, we hold that the trial court should have directed a verdict in favor of defendants Wallace, Lancaster and Joslin for any liability caused by the execution of the search.

We now examine Magnussen's and Lindenberg's conduct in seizing the canoe on plaintiffs' property. We conclude that seizure of the canoe engenders a fact issue. The canoe was not an item of property specified in the warrant. In addition, it is undisputed that the officers did not have probable cause to believe that plaintiffs committed any crime by possessing the canoe. Thus, Magnussen and Lindenberg were not entitled to a directed verdict on the issue of seizure of the canoe.

Seizure of plaintiffs' guns is a different issue. Seizure of firearms not specified in a search warrant may or may not be a reasonable seizure. *See Donta v. Hooper*, 774 F.2d 716, 719–20 (6th Cir. 1985); *United States v. Truitt*, 521 F.2d 1174, 1175–76 (6th Cir.1975). However, another principle rises above the issue of the reasonableness of the seizure of plaintiffs' guns and is controlling in this case. The abuse of a governmental power must be sufficiently egregious to rise to the level of a fourth amendment violation. *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1508–09 (11th Cir.1985). "Even unreasonable conduct may in some instances not be actionable in a section 1983 suit ... where the injury is too minor to rise to the level of a constitutional violation." *Id.* at 1508 (citations omitted).

In this case, it is undisputed that Lindenberg handled and ran a computer search on the serial numbers of two guns that were found during the search. The guns were left on the premises without damage, but a revolver was unloaded and the cartridges were missing. Even though Lindenberg did not recall the incident with the guns, he stated that he would have taken temporary possession of the guns during the search as a safety precaution. At most, the officers had control of the guns for a short time. They had a right to secure the guns for their protection. Plaintiffs had no knowledge of the officers' control of the guns and suffered no actual damages. Thus, we conclude that running computer checks on the guns does not rise to the level of a constitutional violation. The trial court should have removed this issue from the jury's consideration in response to defendants' motion for a directed verdict.

On the other hand, we believe that the five hours the officers spent in executing the search warrant presented a fact issue concerning whether the officers' actions were unreasonable. A considerable amount of time was spent touring the farm with Elvin Bailey and checking his ginseng plants. There were 7,700 roots that were tallied. The officers took time to wait for a photographer to arrive to take pictures. We conclude that the reasonableness of the time intrusion under this record is an issue for the jury to decide.

Likewise, we believe that the extent of the search and the claims of damaged property present fact issues. We recognize that ginseng roots are small and may not be readily visible. However, plaintiffs presented evidence of damage to their food, personal property, and property belonging to their daughter. Plaintiffs' claims, even though disputed, present fact issues concerning the reasonableness of defendants' conduct in executing the warrant. Except for the guns, the trial court correctly denied defendants' motion for a directed

verdict on issues involving the scope and execution of the warrant.

III. *Due process claims.* In their fourth allegation of misconduct, plaintiffs allege that the officers failed to properly care for the seized ginseng through wrongful intent or gross negligence. Plaintiffs rely solely upon a due process, rather than a fourth amendment claim, on the issue of the ginseng's care. Plaintiffs' claim of improper care of the seized ginseng constitutes an allegation of arbitrary government action that falls within the category of a substantive due process claim.

■■■ The trial court instructed the jury that Iowa law and due process requires that officials take proper and reasonable care of seized property. The definitional instruction further stated that due process could be violated by defendants' "wrongful intent or gross negligence." The defendants maintain that the instructions incorporated a negligence standard which cannot form the basis of a claim under section 1983. The defendants further claim that there is not sufficient evidence to submit the issue of gross negligence or wrongful intent to the jury. Thus, we must determine whether the officers' alleged gross negligence in storing the ginseng amounts to a constitutional deprivation under the fourteenth amendment. To reach an answer, we must examine the protections afforded by substantive due process.

The fourteenth amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law...." The Supreme Court recently explained:

> Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property.... This history reflects the traditional and common sense notion that the Due Process Clause, like its forebear in the Magna Carta, ... was "intended to secure the individual from the arbitrary exercise of the powers of government."

*Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662, 668 (1986) (citations omitted) (emphasis in original).

The Court further stated that injury caused by negligence is not a deprivation within the meaning of the fourteenth amendment. *Id.* at 332–33, 106 S.Ct. at 665–66, 88 L.Ed.2d at 668–69. The Eighth Circuit has applied this same reasoning in rejecting constitutional tort claims grounded on substantive due process violations alleging gross negligence. *Gregory v. City of Rogers,* 921 F.2d 750, 755–56 (8th Cir.1990); *Myers v. Morris,* 810 F.2d 1437, 1468–69 (8th Cir.1987).

We must conclude that the allegations of the defendants' gross negligence in the care of the ginseng does not rise to a constitutionally protected right under the fourteenth amendment. Section 1983 imposes liability for the violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433, 443 (1979). This is not the sort of governmental conduct that the fourteenth amendment was designed to prevent.

■■■ A remaining issue concerns the damages caused by defendants' alleged "wrongful intent." Substantive due process protects against abusive government conduct including deliberate or intentional misconduct of an official. *Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677, 682–83 (1986). An act becomes willful in law only when it involves some degree of conscious wrong or evil on the part of the actor. *State v. Willing,* 129 Iowa 72, 74, 105 N.W. 355, 356 (1905). In this case, the trial court defined wrongful intent as "an intent by the official to damage or devalue the property." Defendants do not challenge this definition but claim they were entitled to a directed verdict on this issue.

■■■ Plaintiffs claim damages arising out of the freezing of the ginseng. Defendants urge that their conduct did not rise to the level of an intentional misconduct. Defendants testified that they wanted to preserve the ginseng in its natural state and secure it by locking it in a freezer. They believed the ginseng would not be

harmed in a freezer because the roots were subject to freezing in the ground. Plaintiffs stress that Elvin Bailey told the officers that freezing would ruin the ginseng. Defendants admitted that plaintiffs were knowledgeable on the subject of ginseng. Thus, we believe that a jury might infer an intentional wrong by the officers' failure to heed plaintiffs' advice.

■ Finally, defendants urge that plaintiffs had no property rights in ginseng that was harvested out-of-season. Even though this ginseng may have been subject to forfeiture as property obtained in violation of law, Iowa Code § 809.1 (1985), the State did not obtain a forfeiture order. Under these facts, the ginseng may well be derivative contraband and mere personal property that is not unlawful per se. *See In re Property Seized,* 362 N.W.2d 565, 568 (Iowa 1985); *State v. Merchandise Seized,* 225 N.W.2d 921, 924 (Iowa 1975). Therefore, we believe that plaintiffs established their property rights in the seized ginseng.

We hold that the issue of whether the ginseng was damaged as a result of defendants' wrongful intent may be retried. The evidence shows that Magnussen, Lindenberg, and Wallace made the decision to freeze the ginseng. Thus, these three defendants should remain as defendants on retrial of this issue.

IV. *Summary.* We hold that the trial court erred in submitting the issues concerning the application for the search warrant to the jury. We also hold that the trial court should have withdrawn from jury consideration any claims for damages for seizure of plaintiffs' guns or for damages arising from gross negligence in the storage and care of the ginseng. We further hold that the court should have directed a verdict in favor of defendants Lancaster and Joslin. The court should have directed a verdict for Wallace on issues arising from the execution of the warrant; however, he remains a defendant on the issue of the damage to the ginseng caused by wrongful intent. Magnussen and Lindenberg remain as defendants on all issues. This case is remanded for trial on the remaining issues involving the execution of the warrant, except for the guns, and the damage to the ginseng caused by the officers' wrongful intent.

Although we have considered all of the issues argued by the parties, we have only addressed those we believe necessary to decide this case. We hold that this case should be remanded for a new trial only on those issues specified in this opinion.

REVERSED AND REMANDED.