# IN THE COURT OF APPEALS OF IOWA

No. 3-1135 / 12-1834
Filed April 30, 2014

MARK DEBOWER,
      Plaintiff-Appellee/Cross-Appellant,

vs.

COUNTY OF BREMER, IOWA, DUANE
HILDEBRANDT, in His Individual and
Official Capacities, and DENNIS MILLER,
in His Individual and Official Capacities,
      Defendants-Appellants/Cross-Appellees.
_____

Appeal from the Iowa District Court for Bremer County, Rustin T. Davenport, Judge.

The defendants appeal from the jury verdicts entered in favor of Mark DeBower in this 42 U.S.C. § 1983 and state law conversion action. DeBower cross-appeals from the court's post-trial rulings. **AFFIRMED ON BOTH APPEALS.**

John T. McCoy of McCoy, Riley, Shea & Bevel, P.L.C., Waterloo, for appellants/cross-appellees.

Bruce J. Toenjes of Nelson & Toenjes, Shell Rock, for appellee/cross-appellant.

Heard by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**DANILSON, C.J.**

This case involves various liability issues arising from the execution of a search warrant and subsequent immediate release of the seized property to the alleged victim. The defendants—Bremer County, Duane Hildebrandt, and Dennis Miller—appeal from the jury verdicts entered in favor of Mark DeBower in this 42 U.S.C. § 1983 and state law conversion action. DeBower cross-appeals from the court's post-trial rulings. For the reasons that follow, we affirm on both appeals and assess $10,000 in attorney fees against the defendants.

**I. Background Facts and Proceedings.**

We have set out many of the underlying facts of this action in a previous appeal where we reversed a grant of summary judgment. *DeBower v. Cnty. of Bremer*, No. 09-1423, 2010 WL 2757112, at *1 (Iowa Ct. App. July 14, 2010). We noted these undisputed facts:

> On June 17, 2005, Earl Burkle told [D]eputy Dennis L. Miller thirty-four evergreen trees, fifteen-seventeen pots, and one maple tree had been stolen from his property approximately three weeks earlier. Burkle stated he had recently seen the trees at the residence of Mark DeBower. Deputy Miller presented a warrant to the magistrate authorizing the seizure of "34 evergreen trees about 2 feet tall and in plastic pots [and] a 12–15 foot [variegated] maple tree that is not in a pot sitting in the yard at [DeBower's] address." Burkle was questioned by the magistrate during the warrant application. The magistrate authorized the warrant.
> Late in the evening of June 17, and continuing into the morning of June 18, Bremer County deputies executed the search warrant at DeBower's acreage. Burkle was present and identified thirty-four evergreen trees, a number of plastic pots, and a twelve to fifteen-foot maple tree as being his property. Burkle identified all the potted evergreens as belonging to him. Additionally, some, but not all, planted evergreens were identified by Burkle as belonging to him. In determining the ownership of a planted evergreen tree, Burkle stated it was not his tree if it could not be pulled out of the ground because then "it wasn't planted in the last two weeks." The trees Burkle identified were immediately loaded into Burkle's truck.

> Deputy Miller photographed all the trees and gave DeBower an inventory sheet of all the trees seized.
>
> As Burkle and the deputies were leaving, they stopped in the driveway. Burkle had noticed additional trees that appeared to be recently-planted in a curving row. Burkle identified eleven of the twelve trees as his trees. Deputy Miller contacted assistant county attorney Bryan Barker to discuss seizing the second set of trees and Barker authorized the seizure. Deputy Miller photographed the additional eleven trees and gave DeBower a second seized property form. In all, the deputies seized forty-five evergreen trees.

*Id.* Law enforcement turned all the seized trees and pots over to Burkle. *Id.*

Five months after the seizure, Deputy Miller testified that it was his department's policy to fill out an inventory of seized property and then return the stolen property to the owner or victim. *Id.* at *1-2.

DeBower was charged with theft, but acquitted. *Id.* He filed an application for the return of the seized trees and pots. *Id.* at *2. The district court denied the application, but this court reversed on appeal, concluding the State lacked standing to advocate for possession on behalf of the person it believed to be the true owner of the trees. *See id.* at *3 (citing *In re 1972 Euclid Avenue, Mark DeBower*, No. 07-0552, 2008 WL 2039310 (Iowa Ct. App. May 14, 2008)).

Eventually, the district court found that of the forty-five trees seized from DeBower, only sixteen remained living. *Id.* The district court ordered the State to "use its best efforts to obtain" the property in Burkle's possession and return it to DeBower. *Id.* Almost four years after the seizure, sixteen living evergreen trees, twenty-nine dead evergreen trees, and fifty-one pots were returned to DeBower. *Id.*

DeBower filed a petition against Sheriff Duane Hildebrandt, Deputy Miller, and Bremer County seeking relief under 42 U.S.C. § 1983 on several grounds:

for taking his property without compensation; for a violation of his due process rights—both procedural ("a pre-delivery hearing on his property rights") and substantive (not "being subjected to the arbitrary action of a non-judicial determination of his property rights by law enforcement"); and for conducting an unreasonable search and seizure in violation of his Fourth and Fourteenth Amendment rights. *Id.* at *4.

### A. *Prior Summary Judgment Rulings.*

In November 2008, the defendants moved for summary judgment on all claims and, in March 2009, the district court granted partial summary judgment. After determining the method for procuring the search warrant was proper, the court examined the execution of the warrant. *See id.* The district court stated:

> When executing a warrant officers are scrutinized for unreasonable behavior "from the moment of entry until the moment of departure." [*Bailey v. Lancaster*, 470 N.W.2d 351, 358 (Iowa 1991)]. In this case the police actually seized more than what was on the warrant: the warrant allowed for police to seize a total of 35 trees, but in actuality they seized an additional 11 trees that were not on the warrant. However, the police have the right to seize objects other than those in the warrant when the police have the right to be at the place where the object is found and when the immediate illegality of the thing seized is known; this is the plain view exception. *State v. Chrisman*, 514 N.W.2d 57 (Iowa 1994). In this case, the police had a search warrant and had a right to be at DeBower's property, because the warrant was valid. Furthermore, Burkle identified the trees immediately as illegally being in DeBower's possession, as he recognized them as the type and number stolen from him before this incident. Because Burkle and the police had a right to be at DeBower's home and Burkle immediately recognized the trees in plain sight as his own, the other trees seized would also be a valid seizure because they fall into [the] plain sight exception. Because the warrant was valid and all the items seized were on the warrant or fell into the plain sight requirement, the search and seizure was proper up to that point.
>
> As mentioned above the actual seizure of the trees was valid; however, the final act that the state made in executing this warrant was taking the trees from [DeBower] and placing them in

Burkle's custody. The court in *Bailey* held that the destruction of property in the execution of a search warrant can rise to the level of a 1983 violation. One could argue that dispossession of property for a number of years could also rise to a 1983 violation, because in both cases, the value of the property seized has been rendered worthless to the claimant because the destroyed property is gone, and the dispossessed property [cannot be] enjoyed or transferred and therefore of no value to claimant.

*Id.* Accordingly, the district court ruled summary judgment should not be granted for the following claims:

1. 1983 claim, because seizing the trees from DeBower and placing them with Burkle may have violated the 4th and 14th Amendments.
2. Immunity for the officers who participated in the execution of the warrant, because a jury could decide that transferring possession to Burkle may have been unreasonable and therefore not protected by immunity.
3. Conversion [because] there exists material issues as to the good faith of the officers.

*Id.* at *5.

However, upon the parties' requests for reconsideration and clarification, and the defendants' second motion for summary judgment, the district court dismissed all DeBower's claims. *Id.*

### B. Appeal from Summary Judgment—Reversed and Remanded.

On appeal, we concluded fact questions remained precluding summary judgment. *Id.* at *12. We first concluded Deputy Miller's conduct in seizing the additional eleven trees under the "plain view" exception engendered a fact issue for the jury as to whether the "incriminating character" of the item seized was "immediately apparent," which is the pertinent question set forth in *Horton v. California*, 496 U.S. 128, 136 (1990). *See id.* at *7.

We also found that "[w]hether the officers transferred temporary possession of the trees to Burkle for safekeeping or improperly released the property is a disputed factual issue." *Id.* at *9. Because this fact issue was material to the qualified immunity analysis (i.e., Did the officers execute the warrant and seizure in a reasonable manner?), we determined summary judgment based on qualified immunity was precluded. *Id.*

With respect to the claims against Bremer County, we observed the County "is liable under § 1983 only where its policies are the moving force [behind] the constitutional violation. . . . [L]iability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives." *Id.* at *10 (internal quotation marks and citation omitted). We concluded fact issues existed in regard to the existence and application of a county policy "concerning the warrantless seizure of the eleven trees in excess of the warrant and the immediate and intentional transfer to Burkle." *Id.* at *19.

We also found summary judgment was in error on DeBower's state law takings and conversion claims, stating:

> [T]he issue of whether the officers transferred temporary possession of the trees to Burkle for safekeeping and the property remained in custodia legis or the officers intentionally released the property to complaining witness/victim Burkle without keeping control is a disputed factual issue preventing summary judgment.
> Further . . . there was a factual dispute concerning the "good faith" factor of the interference element of conversion.

*Id.* at *11. We remanded for further proceedings.

The defendants sought further review of our appellate decision, which the supreme court denied.

### C. Judgment for DeBower.

On remand, the defendants moved for summary judgment for a third time, again contending they were entitled to qualified immunity. The district court denied the third motion for summary judgment, stating: "Because the Court of Appeals found factual issues surrounding Defendants' qualified immunity claim precluded summary adjudication and *Defendants have not resolved any of those disputed facts*, this third motion for summary judgment must be denied." (Emphasis added.)

A jury trial resulted in verdicts in favor of DeBower on all claims submitted, though the takings claim and the state constitutional claims were withdrawn. The jury found DeBower was entitled to compensatory damages against all the defendants, as well as punitive damages against the individual defendants.

### D. Post-trial Motions and Ruling.

The defendants filed motions for judgment notwithstanding the verdicts and for new trial. The district court granted the motion for judgment notwithstanding the verdicts in part, but denied the motion for new trial, stating,

> Generally, with the exceptions previously noted in the rulings on judgment notwithstanding the verdict, substantial evidence supports the jury's determination regarding the amount of damages. Although the amount awarded may have been substantially more than what this court, or another jury might have awarded, this court cannot say that the amounts awarded were so excessive that it shocks the conscience.

### E. Appeal Issues.

The defendants now appeal and DeBower cross-appeals. The defendants contend: (1) the trial court erred in failing to grant Hildebrandt and Miller qualified immunity as to the § 1983 claims; (2) the trial court erred in allowing the jury to

determine whether the officers' seizure of the eleven additional trees violated the Fourth Amendment; (3) the trial court erred in imposing liability upon Bremer County for Hildebrandt's "decision how to preserve the seized evidence"; (4) the trial court erred in not overturning the jury's finding the defendants wrongfully converted the seized property; and (5) the trial court erred in allowing the plaintiff's expert witness, Thomas Gustafson, to testify concerning legal standards.

On cross-appeal, DeBower argues the trial court (1) erred in setting aside the verdict on his substantive due process claim; (2) erred in setting aside the award of punitive damages; (3) erred in granting the defendants' motion for judgment notwithstanding the verdict as to the willful injury of the trees; (4) erred in reducing the attorney fee award by ten percent; and (5) abused its discretion in granting the defendants' motion in limine excluding any reference to the prosecution of DeBower's son. He seeks an award of appellate attorney fees.

**II. Defendants' Appeal.**

*A. Warrantless seizure.* We first consider the defendants' contention the trial court erred in allowing the jury to consider whether there had been an "unreasonable search and seizure of the [eleven] trees in excess of the search warrant" as defined by jury instructions. In essence, the defendants argue the incriminating nature of the trees was readily apparent as a matter of law and they set out evidence they contend supports a plain view seizure.

> We review a district court's ruling on a motion for directed verdict for correction of errors at law. A directed verdict is required only if there was no substantial evidence to support the elements of the plaintiff's claim. Evidence is substantial when reasonable minds would accept the evidence as adequate to reach the same

findings. Where reasonable minds could differ on an issue, directed verdict is improper and the case must go to the jury. Thus, our role is to determine whether the trial court correctly determined if there was substantial evidence to submit the issue to the jury. In doing so, we must view the evidence in the light most favorable to the nonmoving party and take into consideration all reasonable inferences that could be fairly made by the jury.

*Pavone v. Kirke*, 801 N.W.2d 477, 486-87 (Iowa 2011) (internal quotation marks, edits, and citations omitted).

The defendants raised the same issues in their post-trial motions. They argued there was substantial evidence that officers had probable cause to believe the additional trees were incriminating and could be seized within the plain-view exception to the warrant requirement.

The district court rejected this ground in its post-trial motion ruling, stating:

> The jury was instructed regarding this issue in Instruction 15, and 17 through 19. The application of the plain view exception to the warrant requirement was set forth in Instruction 19. The jury instruction discussed that probable cause is a flexible, common-sense standard. It did not demand any showing that the officers' belief was correct or more likely true than false.
> As the defendants argue, there was substantial evidence here that would have supported a finding by the jury that the seizure of the 11 additional trees was reasonable. However, there was also some basis for the jury to conclude that the seizure was unreasonable. Burkle had specifically set forth in his initial affidavit the number and description of the trees that he was seeking. More than three weeks had passed since the original affidavit until the date of the seizure without Burkle reporting any further stolen trees. Even though Burkle had identified certain trees as his, the trees by themselves would have not been incriminating.

The defendants do not contend the jury was improperly instructed. And, viewing the evidence in the light most favorable to DeBower, we conclude there is substantial evidence from which the jury could find the incriminating nature of the additional seized property was *not* immediately apparent to the officers.

The officers had already seized the number of trees listed on the warrant. They were departing when they were directed to a location by Burkle who was claiming additional trees were his. The trees were not inherently illegal. The deputies had no training or expertise on the subject of trees and could not identify trees by species. Burkle alone determined what trees to seize. In addition, part of Burkle's method of determining if a tree was "his" involved whether each tree could be pulled from the ground easily, which alone could support a finding that the incriminating nature of the tree was not immediately apparent. The district court did not err in sending the issue to the jury. Further, there was substantial evidence for the jury to conclude the law enforcement officers seized the eleven trees although their incriminating nature was not readily apparent to them. Without some sort of identification tag or unusual feature identifying a particular tree, identification would certainly seem extremely difficult. Moreover, here the claimed identification could not be made without pulling the tree from the ground, and thus the jury could have concluded the identification of the trees was not "readily apparent."

**B. Qualified Immunity.** The defendants also argue the trial court erred in failing to grant Hildebrandt and Miller qualified immunity as to the § 1983 claims. We conduct a de novo review of constitutional issues. *Kelley v. Story Cnty. Sheriff*, 611 N.W.2d 475, 478 (Iowa 2000).

In the post-trial motion ruling the district court noted qualified immunity is defeated where a defendant violates a clearly establish right. The court expressed its disagreement with this court's earlier ruling that a fact question precluded dismissal based on qualified immunity, but found our previous decision

controlled on the issue.  The district court concluded the verdict could not be set aside on this ground.

DeBower's claims of constitutional violation rely upon 42 U.S.C. § 1983. DeBower thus had to show the defendants (1) deprived plaintiff of a right, privilege, or immunity secured by the United States Constitution and (2) acted under color of state law.  *See Bailey v. Lancaster*, 470 N.W.2d 351, 356 (Iowa 1991).  There is no question the defendants here were acting under color of state law.  Thus, we must determine whether or not the plaintiff suffered damages as a result of a constitutional deprivation.

DeBower specifies his right to be free from unreasonable searches and seizures was violated.  Such a claim is a "specific protection defined in the Bill of Rights which has been incorporated into the Fourteenth Amendment."  *Id.*; *see also Willson v. City of Des Moines*, 386 N.W.2d 76, 80 (Iowa 1986).  In addition, DeBower claims he was deprived of his property as a result of the improper storage of the seized trees allegedly caused by the defendants' wrongful transfer of the trees to another.  Where the law enforcement retained possession of the seized property, our supreme court has concluded such a claim involves arbitrary government action in improperly storing the seized property and is a substantive due process claim.  *See Bailey*, 470 N.W.2d at 356.

"[T]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Leydens v. City of Des Moines*,

484 N.W.2d 594, 597 (Iowa 1992). Qualified immunity balances two important competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

In addressing a defendant's claim of qualified immunity, "we consider, in any order, whether the facts alleged by the plaintiff 'make out a violation of a constitutional right' and whether that right was 'clearly established' at the time of defendant's alleged misconduct." *Minor v. State*, 819 N.W.2d 383, 400 (Iowa 2012) (quoting *Pearson*, 555 U.S. at 232, 236).

The defendants contend the issue of qualified immunity is a legal question for the court to decide and this court wrongly found a jury question precluded the granting of qualified immunity.

It cannot be questioned that DeBower in 2005 had a clearly established Fourth Amendment right to be free from unreasonable searches and seizures. *See Bailey*, 470 N.W.2d at 356. However, "whether the facts alleged by the plaintiff 'make out a violation of a constitutional right,'" depended upon fact issues we previously identified.[1] *Minor*, 819 N.W.2d at 400. In other words, we

---

[1] In *DeBower*, 2010 WL 2757112, at *14, we stated:

> We conclude Deputy Miller's conduct in seizing the additional eleven trees based on Burkle's new allegations of ownership after he spotted newly-planted trees as he was leaving the property and based on whether the trees could be pulled out of the ground during a night-time search engenders a fact issue on whether "the incriminating feature of the object was immediately apparent." Burkle's handwritten statement clearly asserts "34 trees" were stolen "about 3 weeks ago" and thirty-four trees had already been seized under the warrant. Three weeks is sufficient time to accurately identify the number of trees stolen. Further, defendants provide no authority to support a seizure of property not listed

determine whether the defendants' conduct constituted a reasonable warrantless search presented factual issues for the jury. *See Bailey*, 470 N.W.2d at 360 (concluding a directed verdict was not warranted where a fact question was presented by seizure of a canoe, an item not specified in the warrant and for which there was not probable cause to believe the plaintiffs committed any crime by possessing).

In its post-trial ruling, the district court wrote:

> Whether a right is clearly established depends upon whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines. *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004).
>
> Deputy Miller's decision to seize the 11 additional trees was supported by Miller's evaluation that the information provided by Burkle was credible. Burkle was able to distinguish between the trees owned and not owned by him. He was able to describe the root structure of the maple tree that he alleged was taken from him and which matched the maple tree seized from DeBower's property. The evening of the search Mark DeBower was unable to provide consistent information regarding his prior ownership of the trees. The 11 additional evergreens seized were similar to the other trees seized and appeared to have been recently planted. Burkle had identified the additional 11 trees as trees that had come from his property. Finally, Miller consulted the Assistant County Attorney to obtain approval of the removal of the 11 additional trees.
>
> *Given these facts*, it is difficult to conclude that the seizure of the 11 additional trees was contrary to DeBower's clearly established constitutional rights. However, in reviewing the Court of Appeals decision it would appear that nearly all of the facts presented at trial were considered by the Court of Appeals. This court cannot determine that the rationale of the Court of Appeals would have been any different given a few changes in the facts.

(Emphasis added.)

---

in the warrant based upon unsworn claims made by a civilian participating in the search.

Note that we emphasize the court's critical words—"given these facts." The "facts" given by the district court (that the information provided by Burkle was credible, that the additional trees were similar to others seized, etc.) depended upon whether or not the jury accepted the testimony of the witnesses. Those factual determinations, especially matters of credibility, fall within the particular purview of the jury. *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) ("The function of the jury is to weigh the evidence and 'place credibility where it belongs.'" (citation omitted)). The jury members were free to give the witnesses' testimony such weight as they thought it should receive. *Id.* As we observed in *DeBower*, 2010 WL 2757112, at *14, whether the "incriminating character" of the trees seized was "immediately apparent," presented issues of fact for the jury. *See Ortiz v. Jordan*, 131 S. Ct. 884, 889 (2011) ("Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion. A qualified immunity defense, of course, does not vanish when a district court declines to rule on the plea summarily. The plea remains available to the defending officials at trial; but at that stage, the defense must be evaluated in light of the character and quality of the evidence received in court.").

The officers had already seized thirty-four trees, which is the number of trees Burkle provided in his sworn written statement—and the number of trees authorized for seizure in the warrant. Burkle then walked around DeBower's property—sometime after 11:30 p.m.—pointing out other trees he now claimed were his. Deputy Miller testified he relied upon Burkle's observations in seizing additional trees. We remain convinced whether the incriminating nature of the

trees was immediately apparent is not a question that can be determined as a matter of law, and the issue was properly sent to the jury. *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.").

The defendants make much of the fact that Deputy Miller called an assistant county attorney asking whether they could legally seize the additional trees. They argue the United States Supreme Court has ruled that law enforcement officers may reasonably rely upon legal counsel's advice, citing *Messerschmidt v. Millender*, 132 S. Ct. 1235 (2012). The defendants' reliance on *Messerschmidt* is misplaced. That case involved a § 1983 suit for damages on grounds a search warrant was unconstitutionally overbroad. *Messerschmidt*, 132 S. Ct. at 1243. The federal district court rejected the law enforcement defendants' claim of qualified immunity. *Id.* A divided Court of Appeals reversed, concluding the officers "reasonably relied on the approval of the warrant by a deputy district attorney and judge." *Id.* at 1244. The Supreme Court allowed that the officers' having presented a warrant application to and obtained approval from the prosecuting attorney was *one* factor to consider in determining whether it could be determined "no officer of reasonable competence would have requested the warrant." *Id.* at 1249. The Supreme Court majority observed,

> We [have] rejected . . . the contention that an officer is automatically entitled to qualified immunity for seeking a warrant unsupported by probable cause, simply because a magistrate had approved the application. And because the officers' superior and the deputy district attorney are part of the prosecution team, their review also cannot be regarded as dispositive. But by holding . . . that a magistrate's approval does not automatically render an

officer's conduct reasonable, we did not suggest that approval by a magistrate or review by others is irrelevant to the objective reasonableness of the officers' determination that the warrant was valid. Indeed, we expressly noted that we were not deciding "whether [the officer's] conduct in [that] case was in fact objectively reasonable." *The fact that the officers secured these approvals is certainly pertinent in assessing whether they could have held a reasonable belief that the warrant was supported by probable cause.*[2]

*Id.* at 1249-50 (emphasis added) (citations omitted).

Here, however, the defendants ask that we conclude an officer's discussion with the assistant county attorney—a "part of the prosecution team," *id.* at 1249—about matters not authorized by the warrant shields them from liability as a matter of law. We decline the invitation.[3]

---

[2] In one *Messerschmidt* dissent, Justice Sotomayor urged otherwise:

The Court also makes much of the fact that Detective Messerschmidt sent his proposed warrant application to two superior police officers and a district attorney for review. Giving weight to that fact would turn the Fourth Amendment on its head. This Court made clear in *Malley* that a police officer acting unreasonably cannot obtain qualified immunity on the basis of a neutral magistrate's approval. It would be passing strange, therefore, to immunize an officer's conduct instead based upon the approval of other police officers and prosecutors. . . . The effect of the Court's rule, however, is to hold blameless the "plainly incompetent" action of the police officer seeking a warrant because of the "plainly incompetent" approval of his superiors and the district attorney. [(citing opinion of Kagan, J., 132 S. Ct. at 1248-50, concurring in part and dissenting in part). . . . Under the majority's test, four wrongs apparently make a right. I cannot agree, however, that the "objective legal reasonableness of an official's acts," *Harlow* [*v. Fitzgerald]*, 457 U.S. [800,] 819 [(1982)], turns on the number of police officers or prosecutors who improperly sanction a search that violates the Fourth Amendment.

*Messerschmidt*, 132 S. Ct. at 1260 (Sotomayor, J., dissenting).

[3] We also note the assistant county attorney testified that he had not read the warrant, yet he believed the trees were within the scope of the warrant. The assistant county attorney also testified he told the deputy that he could seize the property "if it was *immediately apparent to Mr. Burkle* that those were, in fact, part of the trees that were taken from his . . . livestock buying station." "The necessary probability exists when there is probable cause to associate the property with criminal activity." *State v. Oliver*, 341 N.W.2d 744, 746 (Iowa 1983); *see, e.g., U.S. v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990) (observing that the incriminating nature of the plants was immediately apparent *to the experienced police officer trained in the recognition* of marijuana).

The defendants also moved for judgment notwithstanding the verdict on the conversion claim on the ground of statutory immunity. In respect to statutory immunity, the district court stated in its post-trial motion that on the "eve of trial," the defendants raised a statutory immunity claim under Iowa Code sections 670.4(3)[4] (providing that any claim based upon an act or omission of an officer or municipality, in exercising due care, in the execution of a statute, ordinance, or regulation, or based upon the exercise or performance or the failure to exercise or perform a discretionary duty on the part of municipality entitles the officer to immunity from tort liability), 670.12 (stating "[a]ll officers and employees of municipalities are not personally liable for claims which are exempted under section 670.4"), and 669.14(2) (stating Iowa Tort Claims Act does not waive sovereign immunity for claims arising from "the detention of any goods or merchandise by any law-enforcement"). The court determined no statutory protection was available here because there was a statutory duty to safe-keep the seized property and no discretionary duty was exercised or performed. Because the evidence shows the defendants had a duty to but did not safe-keep the seized property, we agree.[5]

---

[4] The paragraphs of Iowa Code section 670.4 were renumbered by 2013 Iowa Acts, ch. 30, § 196. The exemption noted is now codified at section 670.4(1)(c).

[5] The defendants contend they are entitled to immunity for detention of seized evidence pursuant to Iowa Code section 669.14(2) contending county employees enforcing state law are considered state employees. This assertion is based upon a federal court opinion, *McGhee v. Pottawattamie County, Iowa*, 547 F. 3d 922, 930-31 (8th Cir. 2008), in which the federal court held county employees were immune from suit based on section 669.14(4) of the Iowa Tort Claims Act (ITCA). The Iowa Supreme Court, however, recently held that "the mere act of enforcing state law is not enough to bring municipal officials and employees within the scope of the [Iowa Tort Claims Act] and its immunities." *Thomas v. Gavin*, 838 N.W.2d 518, 527 (Iowa 2013). In addition, the supreme court observed, "[F]rom the way sections 670.4 and 670.12 are worded, it appears that chapter 670's remedies and exemptions are basically exclusive as to

**C. Bremer County liability.** The defendants next urge it was error to impose liability on Bremer County for Sheriff Hildebrandt's "decision how to preserve the seized evidence." They argue that the decision was not policy or established custom, but rather a judgment call in a unique situation.

Under 42 U.S.C. § 1983, a municipality may not be held vicariously liable for the unconstitutional acts of employees. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). However, a municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. *See id.; see also Doe v. Washington Cnty.*, 150 F.3d 920, 922 (8th Cir. 1998) ("Municipal liability under section 1983 is appropriate in cases where a municipal "policy" or "custom" causes the constitutional violation.").

"[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Monell*, 436 U.S. at 694; *Mettler*, 165 F.3d at 1204.

The defendants note, "Once officers seized the property at issue, the County was under a stat[utory] duty (Iowa Code section 808.9) to safeguard the property." They argue that the statute does not require the County to safeguard

---

municipalities and their employees, regardless again of the law being enforced." *Id.* at 524.

the property in any particular way.[6]  Much of the defendants' remaining argument presumes Sheriff Hildebrandt was acting to preserve the property in authorizing that the trees be turned over to Burkle.  However under the facts presented at trial, it is difficult to conclude the property was safeguarded in any way or fashion.  At trial, there was evidence presented (prior testimony of Deputy Miller) that it was the policy of the department that allegedly stolen property would be photographed, inventoried, and returned to the purported owner.  There was also testimony that no instructions were given to Burkle to preserve the property or keep it safe.

Whether a particular official has 'final policymaking authority' on a particular issue is a question of state law, and the identification of a policymaker is a legal question to be resolved by the trial court before the case is submitted to the jury.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  The district court concluded, "Bremer County's policy regarding the practice of preserving evidence was set by Sheriff Hildebrandt."  We find no error.

Moreover, there is substantial evidence that the sheriff made this policy. Sheriff Hildebrandt testified that he approved the seizure and turnover before the fact, and ratified the officers' actions after the fact.  Sheriff Hildebrandt testified as to his thought process in ratifying the turnover.  We agree with the district court

---

[6] Iowa Code section 808.9 provides, "Property of an evidentiary nature seized in the execution of a search warrant shall be safely kept, subject to the orders of any court having jurisdiction to try any offense involved therewith, so long as reasonably necessary to enable its production at trials.  The disposition of such property shall be in accordance with chapter 809."

Chapter 809 provides procedures for returning property to "[a]ny person claiming a right to immediate possession of seized property."  Iowa Code § 809.3(1).  "The seizing agency *shall not release the property to any party until the expiration of the date for filing claims*."  *Id.* § 809.5(1)(e) (emphasis added).

that "[t]here was substantial evidence to support the jury's determination that Bremer County, through Sheriff Hildebrandt, had an official policy or custom which caused DeBower's claimed constitutional violation."

*D. Conversion.*    The defendants next assert the trial court erred in denying their motion for judgment notwithstanding as to the conversion claim in which they asserted DeBower failed to prove Bremer County's control or dominion over the property was wrongful.  Our review is for correction of errors at law.  *Pavone*, 801 N.W.2d at 493.

The district court rejected the defendants' contention that the jury's findings on the conversion claim should be set aside.  The court wrote:

> When the defendants passed control of the trees and pots to Earl Burkle, the defendants deprived Mark DeBower of his dominion of this property.  Clearly Burkle's possession of the property was inconsistent with DeBower's property right.  By transferring possession of the property from DeBower to Burkle the county effectively deprived DeBower of the property.  The surviving trees were not returned until 2009, at which point many had died.  There was a sufficient fact question to allow whether Bremer County exercised dominion over DeBower's property.
> . . . .
> When the defendants transferred control of the property to Earl Burkle, there was a fact issue as to whether the property was being safely kept.  The law enforcement officers did not place any restrictions or provisions regarding Burkle's care of the property.  The defendant relinquished total control of the property to Burkle.  When the property was returned in 2009, many of the trees had died.  The jury could conclude that the officers violated the Iowa Code, and that the control and disposition of the property was wrongful.

"Conversion is the wrongful control or dominion over another's property contrary to that person's possessory right to the property."  *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1999).  "The essential elements of conversion are: (1) ownership by the plaintiff or other possessory right in the

plaintiff greater than that of the defendant; (2) exercise of dominion or control over chattels by defendant inconsistent with, and in derogation of, plaintiff's possessory rights thereto; and (3) damage to plaintiff." *In re Estate of Bearbower*, 426 N.W.2d 392, 394 n.1 (Iowa 1988).

The County asserts it was entitled to exercise control of the seized property. Even if the County initially properly controlled the seized property, the fundamental problem here is that the County did not retain control of the property—the property was immediately turned over to Burkle. The defendants' argument overlooks the seizing officer's continuing duty to safely keep the property. *See* Iowa Code §§ 808.8, 808.9. The decision as to what to do with the property—to turn it over without instructions to preserve—was not made by the county attorney, whom the defendants claim is protected by prosecutorial immunity. Moreover, the jury could have concluded the County had no right to possession of the trees in excess of the number recited in the warrant.

We find no error in the denial of the motion for judgment notwithstanding the verdict on the conversion claim.

***E. Expert witness testimony.*** Finally, the defendants contend the trial court erred in allowing certain testimony of the plaintiff's expert witness, Thomas Gustafson.

We review evidentiary rulings for an abuse of discretion. *Hall v. Jennie Edmundson Mem'l Hosp.*, 812 N.W.2d 681, 684 (Iowa 2012). "An abuse of discretion exists when the court exercises its discretion on ground or for reasons clearly untenable or to an extent clearly unreasonable." *Heinz v. Heinz*, 653 N.W.2d 334, 338 (Iowa 2002) (citation and internal quotation marks omitted).

The defendants argue the court abused its discretion in allowing Gustafson to testify concerning the legal elements of the plain view doctrine, "including the alleged (and inaccurate) legal requirement that law-enforcement officers only consider the appearance of the seized property, as opposed to considering all circumstances known to the officer at the time." We observe that the testimony about which the defendants complain first came in without objection.[7] "It is elementary that admission of evidence is not prejudicial error where substantially the same evidence is in the record without objection." *Linge v. Iowa State Highway Comm'n*, 150 N.W.2d 642, 648 (Iowa 1967). Moreover, the district court repeatedly informed the jury the court would instruct them on the applicable law, and it did so. *See id.* (concluding that even if trial court erroneously admits testimony, error may be removed by proper instructions and thus rendered harmless and not prejudicial). We find no abuse of discretion.

---

[7] Gustafson stated without objection,

My understanding of the law is, in regard to a seizure without warrant, there are certain exceptions to the warrant rule. One of those as I term exceptions would be what's called plain view, and I believe that may be the theory upon which these trees, these [eleven] trees, additional trees, were taken, plain view requires that to do so, to take something from another, from their possession without warrant, without a search warrant, there has to be, first of all, that the officer, the seizing officer is in a place where he's entitled to be.

But also, and in this case I think critically important; that to that officer who seizes that property, the incriminating nature of the property must be what is called reasonably or just apparent. In other words, that it has to be that they observed that the incriminating nature of the property itself, the officer who seized it can make that determination. Short of that, it can't be seized, not seized legally.

Q. So the officer has to be able to determine that it is illegal? A. Correct.

Q. There's been a discussion here about totality of the circumstances, and can an officer rely on the totality of the circumstances, other factors than the ability of the officer to look at the item that's being seized that's not listed and say these other factors allow me to conclude that I can seize that property? A. I don't believe he can.

**III. DeBower's Cross-Appeal.**

"A motion for judgment notwithstanding the verdict must stand or fall on the grounds asserted in the motion for directed verdict." We review a district court's ruling on such a motion for correction of errors at law. Iowa R. App. P. 6.907; *see Mitchell v. Cedar Rapids Cmty. Sch. Dist.*, 832 N.W.2d 689, 694 (Iowa 2013). In ruling on the post-trial motions, we view the evidence in the light most favorable to the nonmoving party. *Mitchell*, 832 N.W.2d at 694.

**A. *Substantive Due Process*.** On cross-appeal, DeBower contends the district court erred in setting aside the verdict on his substantive due process claim.

> A substantive due process violation is not easy to prove, as the following observation of one court illustrates:
> [S]ubstantive due process doctrine "does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law." Rather, substantive due process is reserved for the *most egregious governmental abuses against liberty or property rights*, *abuses that "shock the conscience* or otherwise offend . . . judicial notions of fairness . . . [and that are] offensive to human dignity." With the exception of certain intrusions on an individual's privacy and bodily integrity, the collective conscience of the United States Supreme Court is not easily shocked.

*Blumenthal Inv. Trusts v. City of West Des Moines*, 636 N.W.2d 255, 265 (Iowa 2001) (citation omitted).

DeBower initially contends the district court was bound by the law of the case, suggesting this court had already determined the defendants' conduct in turning the property over to Burkle constituted a due process violation. We reject

this argument as our ruling was simply that a factual issue precluded summary judgment.

DeBower argues the jury could reasonably find that the defendants' behavior was inspired by malice or excessive zeal that shocks the conscience. But we agree with the district court that there was not substantial evidence to support the jury's finding that the transfer of the trees to Burkle—though not according to statutory procedure—was so egregious as to shock the conscience. The law enforcement officials are not expected to be arborists and believed they had to release the trees over to someone with experience and training. Further, although the transfer of the trees to Burkle was in error and contrary to law, there was no evidence that it was motivated by ill will toward DeBower. We affirm on this issue.

### B. Damages.

***1. Punitive Damages.*** DeBower also argues the court erred in setting aside the jury's award of punitive damages. DeBower argues the defendants' actions were intentional and violated his rights. Intentional conduct alone is not sufficient—punitive damages may be awarded in a § 1983 action against persons sued in their individual capacity only when the defendant's conduct is shown to be motivated by evil intent or when it involves reckless or callous indifference to the plaintiff's constitutional rights. *See Smith v. Wade*, 461 U.S. 30, 56 (1983); *Willson*, 386 N.W.2d at 84.

The district court concluded in its post-trial motion ruling that there was not sufficient evidence to support the jury's punitive damage awards on the § 1983

claims, or that the injury to the trees had been willful for purposes of the conversion claim.

For much the same reasons that we determined there was not sufficient evidence of a substantive due process violation, we agree with the district court that there was not substantial evidence Deputy Miller's and Sheriff Hildebrandt's conduct was motivated by evil intent or involved a reckless or callous indifference. In *Willson*, the supreme court reviewed a district court's directed verdict on the issue of punitive damages in a § 1983 action. 386 N.W.2d at 84-85. The court upheld the directed verdict with respect to an officer (Officer Brown) who provided information for a search warrant, noting the officer had reasonable cause to believe the information was accurate, and an assistant county attorney had reviewed and approved the application prior to its submission to the court. *Id.* at 85. However, the court reached a different conclusion concerning an officer (Officer Bedford) who in executing a search warrant seized items not specified in the search warrant where there was no reasonable basis to believe the items were stolen.

DeBower argues Deputy Miller's actions were like those of Bedford's. We disagree. In *Willson*, our supreme court described the executing officer's actions as follows:

> The record shows that Bedford was in charge of the execution of the search warrant at the Willson Auto Body Shop. The warrant that he was executing allowed him to search for specific items listed on it. Although he did not find the listed items, it appears that he took several pieces of property from the shop down to the police station where it later could be determined if the property was stolen. He had no reasonable basis to believe that most of this property was stolen or contraband. Basically, the only pieces of property from the auto body shop that Bedford left behind

were those items that were too heavy to lift into the truck to be transported to the police station. The record also indicates that he searched areas of the shop where the items for which he was authorized to search could not have been located. Bedford's method of seizing property at best can be characterized as a "take now and check later" type of an operation.

*Id.*

Here, while Deputy Miller's actions were ill-advised and even ill-conceived, they did not rise to a level of recklessness. As stated by the district court:

Defendants' actions in taking and storing the trees were intentional. The jury has found that defendants violated DeBower's constitutional rights.

However, on June 17, 2005, the officers were acting pursuant to a valid warrant. Prior to seizing the additional 11 trees Miller called Assistant County Attorney Bryan Barker to determine if the seizure of those trees was valid. Even if the advice was not appropriate, the consultation with the Assistant County Attorney would seem to refute the allegation that the acts of the defendants were malicious or recklessly indifferent towards DeBower's constitutional rights. The court concludes that there was not substantial evidence to support the jury's award of punitive damages regarding the seizure of the 11 trees.

We agree punitive damages were not warranted here.

*2. Willful Injury to Trees.* Iowa Code section 658.4 provides,

For willfully injuring any timber, tree, or shrub on the land of another, or in the street or highway in front of another's cultivated ground, yard, or city lot, or on the public grounds of any city, or any land held by the state for any purpose whatever, the perpetrator shall pay treble damages at the suit of any person entitled to protect or enjoy the property.

*See, e.g., Banger v. Osceola Cnty.*, 456 N.W.2d 183, 189 (Iowa 1990) (finding trees cut willfully where the "Board and Engineer lacked the intestinal fortitude to confront plaintiffs and tell them the Board's intent; instead they deliberately misled plaintiffs and waited until plaintiffs were out of Osceola County on an

extended vacation before revving their contracted-for chain saws and destroying the trees").

Here, the jury found Bremer County willfully injured the trees, and treble damages were awarded. We again agree with the reasoning of the district court in rejecting the finding,

> Willful conduct was defined by Instruction 36. DeBower contends that in turning the trees over to Burkle, defendants' action was of "unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm would follow." However, there was little evidence submitted that demonstrated that the defendants were aware it was highly probable that harm would follow. A reasonable jury could not have concluded that there was substantial evidence to support the finding that defendants willfully injured the trees.

*C. Trial Attorney Fees.* The district court awarded attorney fees pursuant to 42 U.S.C. § 1988 in the amount of $179,031.60, which was less than requested by DeBower's attorney.[8]

The attorney fee issue on cross-appeal is dependent upon this court reversing the district court on its rulings concerning the § 1983 claims. Because we have upheld the district court's rulings, we need not address this issue further.

*D. Appellate Attorney Fees.*

DeBower has made application, which is resisted by the defendants, for appellate attorney fees under 42 U.S.C. section 1988, which provides in pertinent part, "In any action or proceeding to enforce a provision of sections 1981, 1982,

---

[8] The court ruled, "Attorney fees will be based upon 956.35 hours plus supplemental hours of 38.27 for a sum of 994.62 hours. Reducing this amount by 10% equals 895.158 hours. Multiplying by $200 results in attorney fees of $179,031.60." DeBower's counsel had requested $250 per hour.

1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Here, DeBower has not prevailed on his cross-appeal but we still view him as the prevailing party as we have upheld the essence of his favorable verdicts. Upon due consideration, we conclude plaintiff is entitled to $10,000 in appellate attorney fees to be taxed as costs. *See Willson*, 386 N.W.2d at 83.

**IV. Conclusion.**

Having found no error of law or abuse of discretion in the district court's rulings, we affirm on both appeals. Appellate attorney fees are awarded to DeBower in the sum of $10,000. Costs on appeal shall be taxed one-half to each party.

**AFFIRMED ON BOTH APPEALS.**